[Crim. No. 6681. In Bank. Feb. 14, 1961.]

THE PEOPLE, Respondent, v. FREDERICK CARL YEAGER, Appellant.

Carl B. Shapiro for Appellant.

Stanley Mosk, Attorney General, Doris H. Maier and Raymond M. Momboisse, Deputy Attorneys General, for Respondent.

SCHAUER, J.—Defendant appeals from an order, made after his conviction of robbery, which grants probation without imposition of sentence. At the time of the offense defendant was 17 years of age. A complaint charging defendant with the robbery was filed in the justice court. That court certified defendant to the juvenile court, the juvenile court remanded defendant to the justice court, and the ensuing proceedings were under the general criminal law. On this appeal defendant's principal attacks are upon the juvenile court's remand for prosecution under the criminal law. Defendant also urges that his motion to disqualify the trial judge for bias (made under Code Civ. Proc., § 170, subd. 5, prior to the effective date of § 170.6) was improperly denied, and that the evidence shows that defendant did not have the specific intent which is an element of robbery. We have concluded that defendant's contentions are without merit and that the order appealed from should be affirmed.

A complaint filed in the Lakeport Justice Court charged defendant, together with John Ward and Dale Woodall,[1] with having robbed Gene Bigham of $96 on July 5, 1959. The justice court made its "Order Suspending Proceedings against Minor under Eighteen and Certifying to Juvenile Court." The probation officer then filed in the juvenile court a petition which avers that defendant "is a person within the provisions of subdivisions (b) and (m) of section 700 of . . . the Welfare and Institutions Code"[2] in that he "wilfully, unlawfully

---

[1]Ward and Woodall were convicted on their pleas of guilty and are not parties to this appeal. References herein to "defendant" are to appellant Frederick Carl Yeager.

[2]Section 700 of the Welfare and Institutions Code provides that "The jurisdiction of the juvenile court extends to any person under the age of 21 years who comes within any of the following descriptions: . . .

"(b) Who . . . has no parent or guardian willing to exercise or capable of exercising proper parental control; or who has no parent

and forcibly'' and ''by fear and violence'' took $96 from Bigham's person in violation of Penal Code, section 211; the petition prays that the court declare defendant a ward of the juvenile court and that he be dealt with as provided in the Juvenile Court Law (Welf. & Inst. Code, div. 2, part 1, ch. 2, comprising §§ 550-966).

At the ensuing juvenile court hearing defendant appeared with his father and his attorney. The probation officer appeared but took no part in the proceedings. All evidence was presented by the district attorney, without interposition of question or comment by the court or defendant's attorney. Such evidence consisted of testimony of defendant and his father and a transcribed statement voluntarily made by defendant to a deputy sheriff shortly after the crime.

The evidence of the circumstances of the robbery was as follows: On the evening of July 4, 1959, Ward, Woodall, defendant and three other boys, with ''about three cases of half quarts of beer,'' drove in Ward's car from Marin County, where they resided, to Lake County. They attended a dance, stole hubcaps from parked automobiles, and drank beer. Ward, Woodall and defendant then drove from the parking lot near the resort where the dance was held and saw the victim Bigham walking along a road. According to defendant's *statement to the deputy sheriff,* ''Johnny [Ward] . . . turned the car around and came back and stopped and got out. . . . Then he told the guy to get in the car. I think Woody [Dale Woodall] hit the guy before he got in the car. We started driving down a . . . deserted road, and Johnny stopped the car. On the way down Johnny said let's see how much money you have. We stopped the car and told the guy to get out. Then Johnny told the guy he was going to keep the money. He had taken the money while we were driving. The guy said no, I will give you twenty dollars. Woody said take the twenty dollars and let him go. I told Johnny to give the money back to the guy, that this was a felony not a misdemeanor, and Johnny . . . refused to give the money back.

''Johnny hit the guy in the face. I swung at the guy, trying to scare him, but I missed him . . . [*Defendant testified,* however, that ''I missed him and I also hit him twice. . . .''] Johnny gave the guy about forty-eight dollars and kept fifty. I told him to give all the money back.''

---

or guardian actually exercising such proper parental control, and who is in need of such control. . . .

"(m) Who violates any law of this State . . . defining crime."

Ward, Woodall and defendant rejoined their three companions and two other boys from Marin County, and ate at a restaurant. There Ward gave defendant $8.00 of the proceeds of the robbery. The eight boys agreed to "go out and roll somebody," drove a few miles with this in view, then "decided it was taking too much of a chance." After they decided to go home, they saw a sheriff's car and Ward "took off at a high rate of speed to try and lose the cop." The boys temporarily eluded the officers, had a blowout, and drove the car into a dump ground in an attempt to hide. Defendant fell asleep and awakened when the officers discovered the boys.

Defendant further testified as follows:

"Q. When you drink, Fred, do you feel you have to go out and hurt some other human being? A. No, sir.

"Q. Have you any explanation as to why this thing happened? A. No, sir.

"Q. It couldn't just be drink, could it, Fred? A. No, sir. I think maybe the drinking sort of made—I mean you sort of forget the responsibility you have, from your drinking. I don't know. Maybe I guess we just did it. I believe probably the beer was the main part of it, because you just forget all the responsibility you have of other people but yourself.

"Q. Do you feel you forgot it so far this night that you had to hurt somebody else? A. I don't know, sir. I don't know. I just went out of my head."

The evidence as to defendant's background and prior record which was presented to the juvenile court was as follows: On July 4, 1959, defendant was staying alone at his family home in Marin County. His mother and father were in the midwest where the father was attending a business convention. After discussion the parents had decided that defendant was a responsible boy who could be left alone. Defendant had had no disciplinary problems at home or at school. He had completed three years of high school with an A minus average in a university preparatory course and planned, after graduation from high school, to study electrical engineering. He had worked part time during his school years and in the summer of 1959 was employed full time as assistant to a veterinarian.

Defendant had not previously appeared in court and had no police record. However, he had twice been interviewed by the police. He testified that on one of these occasions, when he was a freshman in high school, a friend who was caring for the house of a "fairly rich" man told defendant "to come up and he would get the house open, and they had

a nice Thunder Bird, and a nice big bar, and I went up there and we took out the Thunder Bird and drove it for one or two hours and came back and drank . . . a fairly large amount of beer, and . . . pushed each other around, [and] we went through a plate glass window.'' On another occasion, according to defendant's testimony, he and some companions ''threw some water balloons at a car and we knew the guy, and the Police Officer came up and questioned us, and the guy said he knew what was going on and he didn't care because we were just having a lot of fun. They still took us up to the Police station and they took our names but they didn't do anything to us.''

It seems apparent that the above mentioned conduct was not viewed with any substantial regret or repentance by defendant; likewise, the trip to the police station obviously did not deter him from subsequently participating in the grave crime of which he stands convicted. The trial judge, whether sitting in a juvenile court proceeding or in the trial of a criminal case, manifestly would have been derelict in his duty, both to defendant and to the state, if he failed to consider all of these circumstances.

That defendant had reached some degree of sophistication in the use of alcoholic beverages is indicated by his testimony that he had been drinking for ''four and a half or five months''; ''if I want to get high I drink a lot, and if I don't I just drink a little . . . . Whenever I happen to run into somebody and I have a chance to get some beer or sometimes if I feel depressed we go out and drink our beer and drive around and come home.'' Defendant's parents did not know of his drinking until they were informed of the robbery of July 5, 1959. His father testified as follows:

''Q. Have you any explanation for this, Mr. Yeager, that would be helpful? A. No, sir. I walk the floor at night.

''Q. Trying to resolve in your mind why this happened? A. Why it happened. I feel certainly it will never happen again, I feel as a result of this.

''Q. Well, do you think if you would tell the boy to quit drinking, do you think he would obey you? A. I think if I asked him to give his definite word, he would.''

After presenting the foregoing evidence the district attorney said, ''I have no further questions, Your Honor.'' The judge (still proceeding in the juvenile court) asked, ''Is there any legal reason why these boys should not go back to the

Justice Court?" The district attorney replied, "No legal reason, Your Honor." Defendant's attorney said nothing.

The juvenile court then made the following order: "Good cause appearing therefor, it is ordered that FREDERICK CARL YEAGER, the juvenile above-named, . . . is remanded to the Justice Court . . . for further proceedings under a Complaint now on file therein, charging him with . . . robbery." Following such remand the justice court, sitting as committing magistrate, ordered that defendant be held to answer, and the district attorney filed an information charging defendant with the robbery.

Defendant was arraigned in the superior court before Honorable Benjamin C. Jones, the judge who had conducted the juvenile court proceedings and the only judge of the Superior Court in Lake County. Defendant pleaded not guilty. Counsel for both parties and defendant personally waived a jury trial, although the trial judge said, "I would rather you would try it with a jury." Defense counsel, although it was he who first asked that a jury be waived and although he thereafter joined in such waiver notwithstanding the judge's statement of his preference that the trial be by jury, then raised the question of disqualification of Judge Jones. The Honorable Lincoln F. Mahan, Judge assigned, heard and denied defendant's motion to disqualify Judge Jones.

At the ensuing trial before Judge Jones the testimonies of Mr. Bigham (the victim), Ward, Woodall and defendant include descriptions of the objective circumstances of the crime which accord generally with the above stated evidence at the juvenile court hearing. The testimony at the trial also includes matters showing elements of cruelty and viciousness in perpetration of the offense, actively participated in by defendant, which do not appear in the record of the juvenile court hearing. Mr. Bigham testified as follows: *When the boys first accosted him, defendant* and one of the others "grabbed me and twisted my arms around my back and told me to get in the car." Subsequently, after the boys ordered him out of the car, they beat him, knocked him to the ground and kicked him. As "I was getting up on my knees . . . [*defendant*] held something up in front of me and he said, 'I could kill you so don't talk.' . . . It looked like a knife but I figured out it wasn't." As a result of the attack "My nose was broken, and my foot was broken, and I had bruises and cuts on my face and the back of my head."

Woodall, Ward and defendant testified that the object which defendant displayed to Bigham and with which defendant said he could kill was a screwdriver that defendant had used to steal hubcaps. Defendant further testified that he hit Bigham only once but did so "as hard as I could."

Testimony particularly directed to defendant's state of mind at the time of the offense is hereinafter set forth in connection with our discussion of his claim that there is no sufficient showing of the specific intent to commit robbery.

Defendant's pastor, his employer, his high school principal, the school's dean of boys, and a businessman who knew defendant through participation in young people's organizations, testified to defendant's good reputation for truth, honesty and integrity.

That the trial judge gave much weight to the facts of defendant's youth, his good scholastic attainments and the other favorable factors above related, but at the same time concluded that for the defendant's best interests—and thereby for society's—the boy must be brought to a stark realization of the evil already committed and the end toward which he was moving, is manifest from his handling of the case. The evidence, overwhelmingly it seems, establishes defendant's guilt and the court so found. But preserving the defendant's civil rights, the wise judge refrained from pronouncing sentence, and granted probation on the terms recommended in the probation report, which included the condition that defendant reimburse the victim in the sums of $16 (one third of the amount stolen and not previously restored to the victim) and $35.23 (one third of the victim's medical expenses).

*The Propriety of the Juvenile Court Proceedings.* The provisions of the Juvenile Court Law (Welf. & Inst. Code, div. 2, pt. 1, ch. 2) with which we are here principally concerned are found in article 9 (§§ 825-836), entitled "Persons Charged with the Commission of Crime." Juvenile court proceedings under this article are instituted by certification from the court in which the minor is charged with crime. (Welf. & Inst. Code, § 720, subd. (c).)[3] Article 7 (§§ 720-751), entitled "Proceeding to Declare a Person a Ward of the Juvenile

---

[3]Section 720 of the Welfare and Institutions Code provides in pertinent part that "A person subject to its jurisdiction may be brought before the juvenile court by any of the following means:

"(a) A petition praying that such person be declared a ward of the juvenile court. . . .

"(c) *Certification from any other court* before which such person is brought, charged with the commission of a crime." (Italics added.)

Court; Commitment and other Disposition of Wards,'' provides for a differently instituted juvenile court proceeding, i.e., the bringing of the minor before the court by ''A petition praying that such person be declared a ward of the juvenile court.'' (Welf. & Inst. Code, § 720, subd. (a).) Although the law appears to be somewhat carelessly and repetitively drafted, it will become apparent that the Legislature thought it desirable to, and did, provide different procedures for the treatment in juvenile court of minors brought before it by petition to have them declared wards of the court and of minors brought before it by certification after a charge of crime under the general law.

Defendant has stated much of his argument as to the juvenile court proceedings here in terms of claimed lack of jurisdiction to proceed under the general criminal law. In this regard the Juvenile Court Law (Welf. & Inst. Code, § 825) provides that ''No court shall have jurisdiction to try the case of any person under the age of eighteen years at the time of the alleged commission of a . . . crime unless the matter has first been submitted to the juvenile court by petition as provided in Article 7 . . . *or by certificate of any other court* as provided in this article [art. 9], *and said juvenile court has made an order* therein directing *that such person be prosecuted under the general law.*'' (Italics added.) Since this matter was submitted to the juvenile court by certificate of the justice court and, after hearing, remanded to the justice court ''for further proceedings under [the] Complaint,'' there was no lack of the ''jurisdiction'' referred to in section 825. There is no other express statutory requirement as to jurisdiction of prosecutions of minors less than 18 years of age under the general law and, as will appear, the asserted particular defects of which defendant complains are not ''jurisdictional.''

Defendant urges that the juvenile court proceedings were fatally defective because section 834 of the Welfare and Institutions Code requires as prerequisites to the remand of a minor for prosecution under the general law that the juvenile court obtain and consider a probation report and make a written ''special finding of fact'' that the minor is not a fit subject for consideration under the Juvenile Court Law, and the court here did not comply with these requirements. We have concluded that section 834 does not apply to the situation of a defendant such as the youth before us, who was initially brought before the juvenile court by certification from another court where he was charged with crime; rather,

it applies to minors over 16 years of age as to whom the jurisdiction of the juvenile court was originally invoked by verified petition pursuant to sections 721 and 722 of the Welfare and Institutions Code.

Section 834 of the Welfare and Institutions Code reads as follows: "Whenever a minor over the age of sixteen years *is brought before the juvenile court by petition alleging that he comes within the description of subdivision (m) of Section 700* [quoted *supra*, f.n. 2], the court shall determine whether the minor is a fit subject for consideration under the Juvenile Court Law and shall make a special finding of fact on this issue. If the court finds, after consideration of the report of the probation officer, the prior record of the minor, his character, the type of offense, and such other factors as the court deems relevant, that the minor is a fit subject for such consideration, it may make such order or orders under the provisions of this chapter [the Juvenile Court Law] as it deems best in relation to such person. If the court finds that the minor is not a fit subject under the Juvenile Court Law, the court shall dismiss the petition, and direct that criminal proceedings be instituted against the minor under the general law." (Italics added.)[4]

The sections of the Welfare and Institutions Code which provide for juvenile court proceedings against a minor such as defendant here, brought before that court by *certification*, are as follows:

Section 826 requires that whenever it is suggested or appears to the judge of any court in which a criminal charge is filed that the person charged was under the age of 18 years at the time of the alleged offense, the judge shall suspend proceedings on such charge, examine into the age of the accused, and if "it appears to his satisfaction" that the accused was under 18 the judge shall certify the facts to the juvenile court; "proceedings against such person on such charge shall be suspended until the juvenile court issues its mandate, as provided in Sections 831 and 832,[5] directing the court before which the

[4]Section 734 somewhat similarly provides that "If upon the hearing, or at any time thereafter, the court determines that any person alleged to come within the provisions of subdivision (m) of Section 700 is not a fit and proper subject to be dealt with under the provisions of this chapter, the court may dismiss the petition, and direct the district attorney to prosecute the person under the general law."

[5]Section 831 provides, "If the judge of the juvenile court finds that the person so charged is under the age of twenty-one years, and that he is a fit subject for consideration under the provisions of this chapter, he may make such order . . . under the provisions of this chapter

charge was made to proceed with the examination into or trial thereof, and the court so suspending its proceedings shall forthwith cause such person to be taken before the juvenile court . . . for consideration and proceedings under this chapter [the Juvenile Court Law].''

Section 827 provides that the certification required by section 826, with attached certified copy of the criminal charge, ''shall be delivered to the clerk of the juvenile court. Upon receipt thereof the clerk . . . shall immediately notify the probation officer who shall thereupon file a petition as provided in Sections 721 and 722 of this code, [6] *except that such petition need not be verified; and the probation officer need make no investigation prior to the filing of such petition. . . .*'' (Italics added.)

Section 829 provides that ''Except as otherwise provided in this article [art. 9 of the Juvenile Court Law, entitled ''Persons Charged with Commission of Crime''] the proceedings in the juvenile court in the case of any person brought before it in accordance with the provisions of Sections 826 and 827 of this code shall be the same as in the case of a verified petition.''

Although section 827 makes the mechanical requirement that the probation officer, without investigation, file an unverified petition in the case of a minor certified from another court, the youth in that situation is not ''brought before the juvenile court'' (Welf. & Inst. Code, § 834) by that unverified petition. In such a case it is the certification of facts by and from the other court, not the filing of the unverified petition,

---

as he deems best in relation to such person. If the judge at any time thereafter concludes that the person is not a fit subject for further consideration under this chapter, he may sit as a committing magistrate and hold a preliminary examination if the person is charged with a felony, or he may remand the person to the court in which the charge is pending for further proceedings thereon. . . ." Section 832 is not pertinent here; it concerns persons of the age of 18 years or more.

[6]Sections 721 and 722 are in article 7 ("Proceeding to Declare a Person a Ward of the Juvenile Court"); they are quoted here for information but, as shown in the text of the opinion, section 827 makes both sections 721 and 722 substantially inoperative in respect to proceedings coming to the juvenile court by certification from a court of criminal jurisdiction. Section 721 provides that "Any person may present to the clerk of the superior court a petition showing that there is . . . a person within the provisions of Section 700 [quoted in part *supra*, f.n. 2] . . . and praying that the superior court deal with such person as provided in this chapter [the Juvenile Court Law]. Prior to the filing of a petition under Section 700, the probation officer . . . shall make such investigation as he deems necessary, and no such petition shall be filed without the approval of the probation officer except by order of the juvenile court. . . ." (Made substantially inoperative as to certification cases.) Section 722 requires that the petition be verified. (Made inoperative as to certification cases.)

which invokes the jurisdiction of the juvenile court. [4] Even the complete failure of the probation officer to file an unverified petition does not deprive the juvenile court of jurisdiction and is not ground for reversal of a criminal conviction after remand of the defendant by the juvenile court. (*People* v. *Renteria* (1943), 60 Cal.App.2d 463, 467-469 [1] [141 P.2d 43].)

That the provisions of section 834 were not intended to apply to a juvenile court proceeding which originates by certification from another court further appears from the last sentence of the section, which states, "If the court finds that the minor is not a fit subject under the Juvenile Court Law, the court shall dismiss the petition, and *direct that criminal proceedings be instituted against the minor under the general law.*" (Italics added.) Where, as here, criminal proceedings have already been instituted under the general law, there is no occasion for such direction by the juvenile court; that court, instead, can simply remand the minor to the court in which the criminal charge is pending (see Welf. & Inst. Code, § 831, quoted *supra,* f.n. 5). Manifestly, the juvenile court proceedings in the case of a minor brought before it by certification cannot be the same as those which originate by verified petition, for in the latter situation the juvenile court, to require criminal prosecution, would have to "direct the district attorney to prosecute the person under the general law" (Welf. & Inst. Code, § 734).[7] Although we conclude that there is no requirement of a "special," express finding of unfitness for "consideration" (i.e., treatment) as a juvenile in proceedings which originate by certification, we point out that obviously the juvenile court must determine that the minor is in fact unfit for continued handling as a ward of the juvenile court. This means in effect that the court must conclude that in all the circumstances of the case the interests of the minor and of society will be better served by the procedures available in the trial court than by those of the juvenile court. Here such determination appears from the juvenile court's remand of defendant "For good cause appearing. . . ."

With reference to the claimed requirement of a probation report, our attention is also directed to the provision

[7]It may be mentioned that in certain circumstances not here applicable the juvenile court judge can also sit as a committing magistrate and hold the juvenile to answer in the superior court. (Welf. & Inst. Code, § 749.)

of section 639 of the Welfare and Institutions Code that "The probation officer . . . shall inquire into the cause for which each . . . person is brought before the juvenile court, and shall make his report in writing to the judge thereof." This statute does not require the judge to consider the report in a proceeding such as the one here under review; it relates to the duty of the probation officer, not the juvenile court judge. (See *In re Spiers* (1936), 15 Cal.App.2d 487, 491 [5] [59 P.2d 838].) In this regard section 640 provides that "The probation officer shall be present in court to represent the interests of each such person when his case is heard,[8] and shall furnish to the court *such information and assistance as the court may require* and shall make his report thereon at that time." Where, as here, the requisite information is adduced in open court directly from the youth and his father, there is no occasion for the court to "require" also a mere hearsay report from the probation officer.

Defendant further contends, in effect, that the juvenile court abused its discretion. He asserts that it failed to consider whether defendant would benefit from consideration under the Juvenile Court Law, "ignored" the fact that defendant had no previous police or juvenile court record, and "paid no heed" to his good record at school and work. Defendant bases these assertions on the court's failure to require, at that stage, a probation report, the lack of an express finding on the issue of fitness for consideration by the juvenile court and the judge's question at the conclusion of the juvenile court hearing, "Is there any legal reason why these boys should not go back to the Justice Court?" As we have seen, the law does not require, and no prejudice appears from the lack of, a probation report; there is no requirement of a "special" express finding of unfitness; and a determination of such unfitness is implicit in the circumstances. And the quoted question does not show any misconception of the duty of the juvenile court.

Defendant also complains that the juvenile proceeding was held in open court. If he wished it private, he could and should have requested this of the juvenile court. (Welf. & Inst. Code, § 733.) Defendant complains further that the hearing was "prosecuted by the district attorney"

[8]It will be remembered that here the defendant, his father, his attorney, and the probation officer were present but that, although having the opportunity, none of them (other than the minor and his father as above related) took an active part in the conduct or manner of presentation of the proceeding.

as "an adversary proceeding." Although juvenile court proceedings are often informal, with the judge participating actively, there is nothing objectionable (particularly where, as here, the matter originates by certification from a judge before whom a criminal proceeding is pending) in the district attorney's presentation of evidence in the manner used here; rather, such conduct of the hearing resulted in respect for the rules of evidence and an intelligible record. (*Cf. In re Contreras* (1952), 109 Cal.App.2d 787, 789-791 [1a] [241 P.2d 631]; *In re Alexander* (1957), 152 Cal.App.2d 458, 461 [2] [313 P.2d 182].)

As defendant recognizes, the determination whether he was a fit subject for consideration under the Juvenile Court Law rests within the sound discretion of the juvenile court. (*People* v. *Dotson* (1956), 46 Cal.2d 891, 896 [5] [29 P.2d 875].) On this appeal we are bound to presume that the court was of the opinion that in view of defendant's age and intelligence, and his admitted history of more than passing difficulties as to drinking, he would benefit more from the orders as made than he would from continuing treatment as a juvenile. Furthermore, the very circumstances of the crime which caused defendant to be brought before the juvenile court were of such a character as to fully warrant that court, in the light of the other facts shown, in concluding that neither the real interests of defendant nor the purposes of the juvenile court would be best served by making defendant a ward of the court. As said in *People* v. *Dotson* (1956), *supra,* p. 896 [6] of 46 Cal.2d, "The law recognizes that a minor may have such a record of delinquency or his derelictions may be of such a character that to make him a ward of the juvenile court would not aid him or serve the purposes of the court." (Accord, *People* v. *Renteria* (1943), *supra,* 60 Cal.App.2d 463, 470 [4].) A contrary conclusion here was not required in the trial court, and is not justified in this court, by the evidence of defendant's good qualities which his counsel emphasizes on appeal.

It is to be observed that the law has not dealt with this youth with extreme severity. As hereinabove mentioned he was not sentenced as a felon and his rights and disabilities are (except for the differences in crimes) as explained in *People* v. *Banks* (1959), 53 Cal.2d 370, 383 [7], 384 [11], 386 [17] [348 P.2d 102]. Under the probation order, he can return to his home, parents, and high school in Marin County, and by the time he has graduated from college he will also have com-

pleted his five-year period of probation and (assuming that he complies with the probation order) will be able to have the charge dismissed.

*Disqualification of the Trial Judge.* As previously indicated, disqualification was sought under section 170 (subd. 5) of the Code of Civil Procedure; the motion for disqualification was made and denied prior to the effective date of section 170.6 of that code, which permits peremptory challenge of a trial judge whose prejudice is averred by affidavit.

Defendant filed his verified statement objecting to trial by Judge Jones and averring that Judge Jones "has shown his bias and prejudice against affiant and . . . the probability of such bias and prejudice and the resultant probability of its adverse effect on the fairness of his trial is shown . . . by the following facts:" Judge Jones while sitting as juvenile judge "did appear to your affiant to have made up his mind as to the guilt or innocence of the defendant" and his refusal "to retain jurisdiction over this matter in the juvenile court . . . disclosed that he has formed an adverse opinion as to the character of your affiant." After Judge Jones remanded this defendant and his two codefendants to the justice court, the justice admitted them to bail of $1,000; when the defendants appeared in the superior court before Judge Jones, the two codefendants pleaded guilty and the judge again fixed bail of $1,000, but "affiant entered his plea of not guilty, and without any hearing and over the protest and objection of affiant's counsel, the bail was summarily raised to the sum of $2,500.00. . . ."

An answering affidavit of Judge Jones denied bias and prejudice and averred that every act of the judge in this proceeding was "done and had with the utmost fairness and consideration of said defendant, and after a full and fair consideration of all of the facts produced before this affiant. . . ."

Judge Mahan read the affidavits, heard argument, and stated that he found a "total dearth of evidence" of bias; in other words, Judge Mahan found in effect that Judge Jones' averments were true.

Defendant argues that because Judge Jones did not controvert what defendant calls the "evidentiary facts," but only denied the inference of bias therefrom, the evidence is not in substantial conflict and the question of bias is one of law to be answered by this court on undisputed evidence. (See *Briggs* v. *Superior Court* (1932), 215 Cal. 336, 344 [3] [10

P.2d 1003].) The so-called "evidentiary facts" averred by defendant were simply the remand for prosecution under the criminal law and the increase in the amount of bail over objection of defense counsel. Judge Jones did not make any statements of disqualifying opinion as did the judge in the Briggs case. As Judge Mahan pointed out, the determination that defendant was not a fit subject for consideration under the Juvenile Court Law was not a finding against him on the ultimate issue in the criminal case, and the increase in bail involved no decision as to guilt or innocence. The fact that Judge Jones at the juvenile court hearing and when he fixed bail drew unfavorable conclusions as to defendant's character does not show that he was prejudiced against defendant. The remand of defendant to the justice court and the raising of the amount of bail were judicial determinations based on the facts before the judge and made in the exercise of broad discretion. Therefore, the following rule applies: "[W]hen the state of mind of the trial judge appears to be adverse to one of the parties but is based upon actual observance of the witnesses and the evidence given during the trial of an action, it does not amount to that prejudice against a litigant which disqualifies him in the trial of the action. It is his duty to consider and pass upon the evidence produced before him, and when the evidence is in conflict, to resolve that conflict in favor of the party whose evidence outweighs that of the opposing party. The opinion thus formed, being the result of a judicial hearing, does not amount to that bias and prejudice contemplated by section 170, subdivision 5, of the Code of Civil Procedure. . . ." (*Kreling* v. *Superior Court* (1944), 25 Cal.2d 305, 312 [2, 3] [153 P.2d 734].) In any event it is not for this court on appeal to retry an issue of fact.

*The Evidence of Specific Intent.* Defendant asserts that in the light of his "uncontradicted" testimony "It is inconceivable that . . . [he] was capable of or did form any specific intent to do anything. The weight to be accorded defendant's testimony of intoxication was for the appraisal of the trier of fact. (*People* v. *Cooper* (1960), 53 Cal.2d 755, 766 [349 P.2d 964].) The following testimony of defendant, not altogether consistent, can and must be resolved to support the trial court's implied finding that defendant specifically intended "the felonious taking [of the victim's money] . . . against his will, accomplished by means of force or fear" (Pen. Code, § 211):

"[W]hen we started popping hub caps I was feeling pretty

high, but I could see everything fairly well, but everything was a little sort of blurry, but as the evening progressed, I . . . got worse and worse until . . . when the officer got us when we were up at the dump, everything was real blurry, I couldn't see much of anything. . . . But I wasn't drunk. I know I wasn't drunk. . . .

"I know I was under the influence of alcohol. I knew basically what I was doing, but I wasn't thinking. . . . I know I said, 'This is a felony, not a misdemeanor and give the money back.' . . . I realized a crime had been committed, but I thought it might help if we gave the money back. . . . We talked about it and I gave $48 back and we got in the car and we talked some more about it" and "decided to get out of there as fast as we could" because "We had done something we knew we shouldn't. . . . We had struck him, we had taken him from the road and taken him some place else and we had taken his money."

The record shows that defendant committed a serious offense; as the attorney general points out, the evidence before the trial court would support a conviction of kidnapping to commit robbery with bodily harm in violation of Penal Code, section 209. No error contributed either to the juvenile court's order remanding defendant for prosecution under the general criminal law or to the ensuing conviction of robbery and order granting probation.

For the reasons above stated, the order appealed from is affirmed.

Gibson, C. J., Traynor, J., McComb, J., White, J., and Dooling, J., concurred.

PETERS, J.—I dissent.

Section 834 of the Welfare and Institutions Code[1] requires, in those cases to which the section is applicable, that, as a condition precedent to a remand of a minor for prosecution under the general law, the juvenile court obtain and consider a probation report, and "shall make a special finding of fact" that the minor is not a fit subject for consideration under the Juvenile Court Law. No compliance was had with either of these conditions. The majority hold that this did not invalidate the remand because section 834 does not, so it is contended, apply to a juvenile court proceeding that originates

[1]The section is quoted in full in the majority opinion and need not be requoted here.

by certification from a court in which a juvenile has been accused of crime. Such holding is contrary to the general intent and purpose of the Juvenile Court Law, and is contrary to the expressed intent of the Legislature. It creates confusion, and establishes a rule of law that is demonstrably unsound.

The majority opinion correctly points out that the Legislature has provided at least two methods for bringing minors before the juvenile court. One is where the minor is first charged with crime in the ordinary courts, and then is certified to the juvenile court by the judge of the regular court. The other method is where the minor is first brought before the juvenile court by means of a verified petition of the probation officer. Undoubtedly the Legislature, in some respects, has provided some different procedures applicable to each method. The question here presented is whether the procedures set forth in section 834 are applicable to both methods, are applicable to the certification method, or are only applicable, as held by the majority, to the verified petition method. In my opinion the requirements of the section are applicable to both methods, and certainly are, at least, applicable to the certification method.

The purpose of the Juvenile Court Law is to provide that a minor who is believed to have committed a criminal offense shall, before he can be tried in the regular courts, first come before a juvenile court judge who shall ascertain whether he and society will best be served by the juvenile court retaining jurisdiction, or by a remand to the regular courts. It makes no difference, so far as this purpose is concerned, how the minor gets to the juvenile court, that is, whether he is brought there by certification or by verified petition. The question is, whether the minor is a fit subject of consideration by the juvenile court. The majority concede that, even in a certification case, before the minor can be remanded, the juvenile court must pass on this issue. But the majority say that the juvenile court judge in a certification case does not have to make a "special finding of fact on this issue," as required by section 834, but may simply make the general finding, as was done here, "[g]ood cause appearing therefor." No possible reason exists that could have impelled the Legislature to have provided expressly for a "special finding" in verified petition cases, but only for a "general" finding (and that by implication) in certified cases. To assume that the Legislature made such a distinction is simply to assume that, without any logical or reasonable basis, it capriciously provided different pro-

cedures for the two methods. Such an assumption should not be made, and, in my opinion, is contrary to the expressed intent of the Legislature.

Section 834 appears in article 9 of the Juvenile Court Law entitled "Persons charged with Commission of Crime." This article includes sections 825 to 836 of the Welfare and Institutions Code. A completely different article of the code deals with cases brought to the juvenile court by the probation officer filing a verified petition. All of the other sections in article 9 refer to problems arising out of the situation where the minor is first charged with crime in the regular courts. Thus, by direct inclusion, the Legislature has demonstrated its intent that section 834 shall apply to certification cases.

This intent is shown by other sections in the same article. Section 826 is the section providing for certification of cases first brought in the regular courts. Section 827 expressly requires, as a condition of certification, that the probation officer file an unverified petition with the juvenile court under the appropriate code sections. Section 700, subdivision (m), specifically referred to in section 834, provides that the juvenile court jurisdiction applies to a person under 21 "[w]ho violates any law of this State." It was under this very provision that the probation officer filed the unverified petition that gave jurisdiction to the juvenile court in the instant case.

Compelling evidence that section 834 is applicable to "certified cases" is to be found in section 829 of the Welfare and Institutions Code. It provides, with unmistakable clarity, that "Except as otherwise provided in this article, the proceedings in the juvenile court in the case of any person brought before it in accordance with the provisions of Sections 826 and 827 of this code shall be the same as in the case of a verified petition." This is an express statutory mandate that section 834 shall apply to cases certified to the juvenile court.

The provisions of section 834 to the effect that a juvenile shall not be remanded to the regular courts unless a special finding of fact is made to the effect the minor is not a fit subject for juvenile court consideration, and until the probation report is considered, are clearly jurisdictional. Stated another way, the regular criminal courts cannot obtain jurisdiction over the minor, unless or until the juvenile court judge complies with the conditions of section 834.

The requirement of section 834 for the filing of the probation report by the probation officer and its consideration by the judge, is also most important. This portion of the section,

too, carries out the basic intent of the Legislature, which is that all criminal cases involving minors shall first be heard in the juvenile court, and shall only be considered by the regular courts when there are compelling reasons why the case should be heard in the regular criminal courts. It is of some significance that the trial judge, in the instant case, granted probation to the minor in regular courts after reading the report of the probation officer that should have been filed and considered by the juvenile judge.

The majority, in concluding that the requirements of section 834 are not applicable to certified cases, place great reliance on one word appearing in the last sentence of the rather lengthy section. That sentence, with the word in question italicized, reads as follows: "If the court finds that the minor is not a fit subject under the Juvenile Court Law, the court shall dismiss the petition, and direct that criminal proceedings be *instituted* against the minor under the general law." It is argued that, because of the word "instituted," the section cannot possibly apply to cases certified to the juvenile court, because, in such cases, criminal proceedings have already been started. Therefore, it is confidently argued, the section can only refer to verified petition cases, because in such cases criminal proceedings have not yet been "instituted." To give such a meaning to that one word is to permit that word to control the meaning of the entire section. As already pointed out, the section as a whole, and the entire article of the code in which the section appears, demonstrate to a certainty that the word involved could not have been intended by the Legislature to have such a meaning. Obviously, the word, when read in context, does not and cannot mean that after such a finding a criminal case must be started for the first time, but simply means that in such event criminal proceedings shall be carried on under the general law. To give any other meaning to the word is to distort the meaning of the entire section and article.

It is to be noted that section 834 requires the trial judge to make "a special finding of fact" that "the minor is not a fit subject under the Juvenile Court Law." It is not suggested by the majority that this requirement was substantially complied with by the general finding "[g]ood cause appearing therefor." Such suggestion, had it been made, would have been unsound. The finding made, in every sense of the word, was a general one. The finding required was special. The word "special" is not a word of art with a par-

ticular and peculiar legal meaning. It is a simple English adjective with a clear and positive meaning. In Webster's New International Dictionary (2d ed.) the word "special" is defined as "[c]ontaining particulars; detailed; specific;—opposed to *general.*" The synonyms given for the word "special" are "particular, peculiar, specific, individual, concrete." One does not have to be an English scholar to know that a finding of "[g]ood cause appearing therefor" is the very antithesis of a "special finding." It is, obviously, a general finding and does not, by any stretch of the imagination, amount to a "special finding of fact." Thus this jurisdictional requirement of section 834 was not complied with, and the case was never properly, or at all, transferred to the criminal court. That court never acquired jurisdiction of the case, its judgment is void, and should be reversed.

The result of the majority opinion is to hold that a juvenile court judge, at his own whim or caprice, and without giving any reasons therefor except the general finding "good cause appearing," may transfer a case out of the juvenile court into the regular court for trial. That is contrary, not only to express provisions of the statute, but to its obvious purposes and intent. To so interpret the section is contrary to the express provisions of the statute, and is violative of public policy. I would reverse the order.

Appellant's petition for a rehearing was denied March 15, 1961. Peters, J., was of the opinion that the petition should be granted.