[Crim. No. 13593.   Second Dist., Div. Five.   Mar. 8, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. SAMUEL EDWARD SMITH, Defendant and Appellant.

Alfred V. Contarino, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and George J. Roth, Deputy Attorney General, for Plaintiff and Respondent.

AISO, J. pro tem.*—Defendant Samuel Edward Smith and his two codefendants Ralph White and Willie Lee Wright were charged in count II of an information[1] with burglary (Pen. Code, § 459) in having entered the store and warehouse building occupied by Mutual Wholesale Liquor, [Inc.], 838 East Fifth Street, Los Angeles, on or about the 11th day of September 1966, with intent to commit a felony and a theft therein. All defendants waived jury trial, and the case was presented to the trial court upon the reporter's transcript of the preliminary hearing supplemented by the testimony of each defendant. The trial court found all three defendants guilty and fixed the crime as being of the second degree. (Pen. Code, § 460, subd. 2.) Defendant was sentenced to state prison while his codefendants received county jail sentences. Defendant Smith appeals from the judgment. Smith contends upon this appeal that: (1) evidence of his intoxication rendered the proof as to specific intent insufficient to uphold his conviction, and (2) his state prison sentence was unduly severe, constituting discrimination and abuse of discretion by the trial court. We have concluded that both contentions lack merit.

█ Whether a person accused of burglary was sufficiently intoxicated to negate his entertaining the requisite specific intent in entering a building, structure, or a room is a question of fact for the trier of fact to resolve. (*People* v. *Mauldin* (1960) 181 Cal.App.2d 184, 188 [5 Cal.Rptr. 243]; *People* v. *Henderson* (1956) 138 Cal.App.2d 505, 509-510 [292 P.2d 267]; *People* v. *Wilson* (1958) 160 Cal.App.2d 606, 607-608 [325 P.2d 106]; Pen. Code, § 22.) █ The weight to be given a defendant's testimony of intoxication is for the trier of fact to appraise. (*People* v. *Yeager* (1961) 55 Cal.2d 374, 391 [10 Cal.Rptr. 829, 359 P.2d 261]; *People* v. *Cooper* (1960) 53 Cal.2d 755, 766 [3 Cal.Rptr. 148, 349 P.2d 964]; *People* v. *Murphy* (1934) 1 Cal.2d 37, 40 [32 P.2d 635].)

Defendant testified that he had met his codefendant White at the Emery Bar on Sixth and Serra, about a block distant from the burglarized premises, around 3 a.m. He further testified that he was intoxicated having had "three or four bottles of wine and some whiskey and some vodka" during the night preceding his arrest and that he would not have entered the building if he had not been drinking. On cross-examination,

---

*Assigned by the Chairman of the Judicial Council.

[1]Count I charged only the appealing defendant Smith with having burglarized the same premises on or about September 3, 1966. This count was dismissed on the People's motion prior to trial.

he admitted that he had gone to the Mutual Wholesale Liquor premises because "some fellow come by and he was telling us there was some whiskey and stuff we could get ahold of if we wanted it" and that he climbed through the window to get into the premises for the purpose of getting some wine, something to drink.

Defendant's equivocal testimony must also be appraised in the light of the prosecution evidence. The Mutual Wholesale Liquor, Incorporated, located at 838 East Fifth Street, Los Angeles, did not sell to the public directly. Its main place of business was at another location, 1910 East 20th Street, Los Angeles. No sales were made from the Fifth Street location which was used primarily as a warehouse.

Mutual Wholesale Liquor, Incorporated, had been previously burglarized five or six times. After it was closed at 2 a.m. Sunday, September 11, 1966, police officers in plain clothes were staked out in the adjacent area. Between 3:15 to 3:30 a.m., Defendant Smith and his two codefendants were observed by the officers as they approached the front of the liquor store, peered through the window into the premises, and walked around to an alley running along the rear of the store. Then one defendant was seen pushing a rear window open. Defendants Smith and White entered the building, and Wright maintained a lookout outside. Smith was found hiding in a box inside the burglarized premises. Upon his person were found the pint bottle of "Royal Satin Gin" and a smaller bottle of "Rocky Mountain Straight Bourbon Whiskey" in evidence as People's Exhibit 1. These brand names and labels were owned by Mutual Wholesale Liquor, Incorporated, which exclusively distributed them.

An earlier burglary (the subject of count I) had occurred at the premises of the Mutual Wholesale Liquor, Incorporated, during the early morning hours of September 3, 1966, at which time seven or eight half-pint and pint bottles of "Royal Satin Gin" along with some 60 cartons of cigarettes were stolen.

Officer John Gehlsen and his partner were patrolling the area in the vicinity of the Mutual Wholesale Liquor, Incorporated, because at roll call, they had been alerted by their watch commander that the liquor concern "might be hit again" that evening between 12:30 and 3:30 a.m. Between 3 and 3:30 a.m., Officer Gehlsen and his partner were north bound in their patrol car on Ceres Street halfway between Sixth and Fifth Streets when they observed defendant Smith

walking south bound on the west side of Ceres. As the patrol car passed Smith, he looked back and turned in the direction towards the patrol car. As Smith was turning, Officer Gehlsen noticed something sticking out of Smith's rear pocket. Officer Gehlsen backed the police car to where Smith was and through the car window asked Smith's name and what Smith had in his rear pocket. Smith responded that his name was Samuel Smith and pulling out a half-pint bottle of ''Royal Satin Gin'' from his pocket, displayed it to the officer.

Asked where he got the bottle, Smith answered that he had been at a bar located at Sixth and Crocker Streets and after it closed, he had walked to Fifth and Wall[2] to the U.S. Liquor Store and purchased *three half-pints,* and that he was enroute home to have a party. Smith was not arrested at that time.

The owner of the Mutual Wholesale Liquor, Incorporated, Mickey Beckenfield, testified that his concern had not sold any liquor to the U.S. Liquor Store since 1963, a date antedating its marketing of ''Royal Satin Gin'' and that, to his knowledge, his concern had not sold to any retail outlets in the vicinity of its Fifth Street storage premises.

■ There was thus ample evidence from which the trier of fact could question Smith's testimony as to his state of intoxication and find that Smith in fact did have the requisite specific intent to commit a larceny as he entered into the burglarized premises. (*People* v. *Washington* (1967) 257 Cal. App.2d 112, 113-114 [64 Cal.Rptr. 478]; and see *People* v. *Hillery* (1965) 62 Cal.2d 692, 702-703 [44 Cal.Rptr. 30, 401 P.2d 382].)

The mere fact that Smith's codefendants in the crime received county jail sentences does not establish Smith's sentence to the state prison as being excessive or an abuse of discretion.

■ By statute burglary in the second degree is punishable ''by imprisonment in the county jail not exceeding one year or in the State Prison for not less than one year or more than fifteen years.'' (Pen. Code, § 461, subd. 2.) Such a statute does not deny equal protection nor is it discriminatory in operation as all persons stand the same chance for leniency or severity within the statutory limits. (*In re Rosencrantz* (1931) 211 Cal. 749, 750-751 [297 P. 15].)

---

[2] We take judicial notice that this would be three blocks west and one block north from Sixth and Crocker Streets, and eight blocks west and one-half block north from the point on Ceres where the officers questioned him. (Evid. Code, § 452, subd. (g).)

■ Whenever the statute leaves undetermined the precise punishment to be meted out to a certain defendant, Penal Code sections 12 and 13 impose a duty upon the trial court to make that determination. Section 12 provides: "The several sections of this code which declare certain crimes to be punishable as therein mentioned, devolve a duty upon the court authorized to pass sentence, to determine and impose the sentence prescribed." And section 13 reads: "Whenever in this code the punishment for a crime is left undetermined between certain limits, the punishment to be inflicted in a particular case must be determined by the court authorized to pass sentence, within such limits as may be prescribed by this code."

■ When the statute provides a choice between a county jail and a state prison sentence, Penal Code section 17 contemplates the authority of the trial judge exercising his discretion as to which is the more appropriate to a given defendant. (Cf. *People* v. *Pryor* (1936) 17 Cal.App.2d 147, 152 [61 P.2d 773].)

■ Modern penological thought is based upon the concept that punishment should fit the offender as well as the crime. Within the area delimited by constitutional and statutory restrictions, the sentencing judge has broad discretion to consider not only the offender's guilt, but also his potential for rehabilitation balanced against the community's need for protection. "The belief no longer prevails that every offense in a like legal category calls for an identical punishment without regard to the past life and habits of a particular offender. . . . Today's philosophy of individualizing sentences makes sharp distinctions for example between first and repeated offenders." (*Williams* v. *New York* (1948) 337 U.S. 241, 247, 248 [93 L.Ed. 1337, 1342, 1343, 69 S.Ct. 1079].) In this case, three prior felony convictions in the states of Idaho and Utah were charged and proved against Smith. (See also *Howard* v. *Fleming* (1903) 191 U.S. 126, 136 [48 L.Ed. 121, 124, 24 S.Ct. 49]; *People* v. *Thompson* (1967) 36 Ill.2d 478 [224 N.E.2d 264, 266]; *Jung* v. *State* (1966) 32 Wis.2d 541 [145 N.W.2d 684, 690]; *United States* v. *Vita* (E.D.N.Y. 1962) 209 F.Supp. 172, 174; Rubin, Weihofen, Edwards & Rosenzweig, The Law of Criminal Correction (1963) ch. 4, § 4, p. 115; 21 Am.Jur.2d (Crim. Law), § 582, p. 545.) No invidious discrimination nor abuse of discretion has been shown.

The judgment is affirmed.

Kaus, P. J., and Hufstedler, J., concurred.