[Civ. Nos. 26292, 26293.   First Dist., Div. One.   Mar. 11, 1969.]

BRUCE A. M., Petitioner, v. THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, Respondent; THE PEOPLE, Real Party in Interest.

(Two Cases.)

*Assigned by the Chairman of the Judicial Council.

Struthers & Crew and David W. Harris for Petitioner.

Thomas C. Lynch, Attorney General, Derald E. Granberg, Karl S. Mayer, John T. Murphy and Charles R. B. Kirk, Deputy Attorneys General, for Respondent and for Real Party in Interest.

SIMS, J.—By petitions for a writ of mandate and a writ of prohibition, petitioner, a 17-year-old minor, seeks to test the validity of an order of the juvenile court which granted the probation officer's request that the charges set forth in a petition pending before the juvenile court be referred to the adult court and that petitioner be tried under the general law, as provided in section 707 of the Welfare and Institutions Code.[1]

The following uncontroverted facts appear from the petitions and the return filed on behalf of respondent superior court and the People: On November 6, 1968 a complaint was filed in the Municipal Court of the City and County of San Francisco charging petitioner with the commission of kidnapping in violation of section 207, kidnapping for robbery in violation of section 209, robbery in violation of section 211, and rape in violation of section 261 of the Penal Code. A

[1]Section 707 provides, as material herein, as follows: "At any time during a hearing upon a petition alleging that a minor is, by reason of violation of any criminal statute or ordinance, a person described in Section 602, when substantial evidence has been adduced to support a finding that the minor was 16 years of age or older at the time of the alleged commission of such offense and that the minor would not be amenable to the care, treatment and training program available through the facilities of the juvenile court, . . . the court may make a finding noted in the minutes of the court that the minor is not a fit and proper subject to be dealt with under this chapter, and the court shall direct the district attorney or other appropriate prosecuting officer to prosecute the person under the applicable criminal statute or ordinance and thereafter dismiss the petition or, if a prosecution has been commenced in another court but has been suspended while juvenile court proceedings are held, shall dismiss the petition and issue its order directing that the other court proceedings resume.

"In determining whether the minor is a fit and proper subject to be dealt with under this chapter, the offense, in itself, shall not be sufficient to support a finding that such minor is not a fit and proper subject to be dealt with under the provisions of the Juvenile Court Law.

"A denial by the person on whose behalf the petition is brought of any or all of the facts or conclusions set forth therein or of any inference to be drawn therefrom is not, of itself, sufficient to support a finding that such person is not a fit and proper subject to be dealt with under the provisions of the Juvenile Court Law.

"The court shall cause the probation officer to investigate and submit a report on the behavioral patterns of the person being considered for unfitness."

petition was also filed with the superior court, sitting as a juvenile court. This petition, filed pursuant to the provisions of section 602 of the Welfare and Institutions Code, alleged that petitioner had violated the laws of this state defining armed robbery, kidnapping and forcible rape. A detention hearing (see Welf. & Inst. Code, §§ 630-636) was held under this petition, and resulted in the order which petitioner seeks to have reviewed.

The minor claims that the proceedings were deficient because the juvenile court acted contrary to the provisions of section 707 of the Welfare and Institutions Code in that it did not expressly find, nor was there substantial evidence to support a finding, that petitioner would not be amenable to the care, treatment and training program available through the facilities of the juvenile court. He also asserts that he was denied the right of cross-examination and an opportunity to present any evidence or argument on the issue of whether he was properly identified as one of the perpetrators of the acts alleged, which were evidenced by the testimony at the hearing. The transcript of the hearing reveals that the court failed to comply with the provisions of section 707, and that petitioner must be granted the relief he seeks.[2] It is, therefore, unnecessary to consider his second point because the circum-

---

[2]The petitions prayed for an order of this court commanding respondent superior court, sitting as a juvenile court and the People of the State of California, as the real party in interest, to remand him to the juvenile court for further proceedings as provided by law, and an order restraining respondent juvenile court from proceeding with the prosecution of petitioner under the general law. The prayers were obviously deficient in seeking an order that the juvenile court remand the petitioner to itself, or cease prosecution of respondent. The municipal court, if it were not for the order under review, would be under such a duty when apprised of petitioner's age. (Welf. & Inst. Code, § 604, and see § 606.) Similarly, the municipal court would be the proper court to restrain from taking further proceedings. The petitioners do, however, allege facts sufficient to warrant an order compelling the juvenile court to vacate the order ostensibly made under the provisions of section 707 of the Welfare and Institutions Code, and to restrain the People from proceeding with the criminal prosecution. (See *Richerson* v. *Superior Court* (1968) 264 Cal.App.2d 729, 735 [70 Cal.Rptr. 350].) The alternative writs which issued were similarly deficient in that they directed the superior court to cease, desist and refrain from prosecuting petitioner as an adult. The People, as real party in interest, were served through the Attorney General and he made return, not only for the People, but for the respondent court, which had also been served, and issue was joined as to the legal effect of the facts before the court. The matter is, therefore, treated as if petitioner had prayed for the proper relief. The vacation of the juvenile court order precludes further proceedings in the municipal court unless and until a further order is made by the juvenile court. (Welf. & Inst. Code, § 606.)

stances which gave rise to his objections may not arise at any subsequent hearing.[3]

The petitioner's attorney was present at the detention hearing on November 13, 1968. Testimony was introduced to establish that petitioner was born March 23, 1951 in Virginia, where his parents still lived; that he resided with the Parks Job Corps, Pleasanton; and that he had been in California for two months "this time." One of the victims testified to the following facts: On November 3, 1968, at about 5:45 p.m., the witness and Barbara were coming out of Golden Gate Park together on foot when they were accosted by five Negro males. The couple were forcibly dragged back into the park and beaten and robbed. Two or three persons set upon the witness and two attacked his companion. The witness was beaten on the head with a tree limb and was threatened with a knife at his throat. He also saw his companion being beaten. He saw she had been "fairly well stripped," and saw one of the attackers laying on top of her moving his back. At the detention hearing he identified petitioner as one of the five assailants.

The attack on the witness and his companion lasted some 15 to 30 minutes. Although several cars passed the area of the attack, no one stopped to offer assistance to the victims. Another Negro male passing on foot through the area was asked if he wanted to "join in the fun" but refused and walked away.

When the witness finally got away to call the police, his companion was still in the park with the five attackers. At the time of the detention hearing on November 13, 1968, the victim was considered to be in serious enough condition that she was unable to appear.

Petitioner's attorney established, in his cross-examination of the witness, that the witness' original statement concerning the incident had been reduced to writing by the police. He requested a copy of the written statement (he did have a copy of the police report) for such light as it might throw on the witness' identification of petitioner. The court suggested that it was not necessary for the detention hearing and that it might be obtained for a hearing on the merits.

[3]In the absence of express precedent for the scope of hearing conducted under the provisions of sections 630-636, or under the provisions of section 707 of the Welfare and Institutions Code, reference may be made not only to the statutory requirements set forth in the code, but also to *Jennings* v. *Superior Court* (1967) 66 Cal.2d 867, 871-878 [59 Cal.Rptr. 440, 428 P.2d 304].

The probation officer thereupon moved for the order under review. He suggested that the four other defendants were adults, and that in view of the serious nature of the charge and the age of petitioner, he should also be referred as an adult. Petitioner's attorney urged that the identification problem should be further pursued before a motion was granted under the provisions of section 707. He also advised the court that he wanted to bring out petitioner's prior record, and the degree of his involvement, if any, in the acts charged. (The witness had merely pointed out petitioner in court as one of the five persons present, of whom two or three had attacked him, and two had held his companion.) Finally, he advised the court that there was no evidence to show that the petitioner would not be amenable to proceedings in juvenile court.

The court, however, indicated that it was going to grant the motion ''because of the very serious nature of the offense.'' The judge further observed, ''. . . the proper place for them [petitioner and his four adult codefendants] to establish his innocence, as I see it, considering the nature of the charge and the testimony that has been developed through this witness . . . is to have it done . . . before the adult court . . . and not here, because of the fact that the boy is seventeen . . . and was identified as being present, and the other four admittedly are adults . . . he will have a fair trial in the adult court. It seems to me that there will be a tremendous duplication of testimony if we have to go through this out here and again in the adult court. I think there has been sufficient testimony here to make an order under Section 707 that this should be handled in the adult court, and that will be the order of the Court this morning.''

In *Kent* v. *United States* (1965) 383 U.S. 541 [16 L.Ed.2d 84, 86 S.Ct. 1045], the Supreme Court had before it a similar problem which arose under provisions of the District of Columbia Code which permitted the juvenile court to waive its jurisdiction. Mr. Justice Fortas, who delivered the opinion of the court, observed, ''It is clear beyond dispute that the waiver of jurisdiction is a 'critically important' action determining vitally important statutory rights of the juvenile. The Court of Appeals for the District of Columbia Circuit has so held. [Citations.] The statutory scheme makes this plain. The Juvenile Court is vested with 'original and exclusive jurisdiction' of the child. This jurisdiction confers special rights and immunities. He is, as specified by the statute, shielded from

publicity. He may be confined, but with rare exceptions he may not be jailed along with adults. He may be detained, but only until he is 21 years of age. The court is admonished by the statute to give preference to retaining the child in the custody of his parents 'unless his welfare and the safety and protection of the public can not be adequately safeguarded without . . . removal.' The child is protected against consequences of adult conviction such as the loss of civil rights, the use of adjudication against him in subsequent proceedings, and disqualification for public employment. [Citation.] The net, therefore, is that petitioner—then a boy of 16—was by statute entitled to certain procedures and benefits as a consequence of his statutory right to the 'exclusive' jurisdiction of the Juvenile Court. In these circumstances, considering particularly that decision as to waiver of jurisdiction and transfer of the matter to the District Court was potentially as important to petitioner as the difference between five years' confinement and a death sentence, we conclude that, as a condition to a valid waiver order, petitioner was entitled to a hearing, including access by his counsel to the social records and probation or similar reports which presumably are considered by the court, and to a statement of reasons for the Juvenile Court's decision. We believe that this result is required by the statute read in the context of constitutional principles relating to due process and the assistance of counsel.'' (383 U.S. at pp. 556-557 [16 L.Ed.2d at pp. 94-95]. See also Welch, *Kent* v. *United States and In re Gault*: *Two Decisions in Search of a Theory* (1967) 19 Hastings L.J. 29, 29-31; Note (1967) 40 So.Cal.L.Rev. 158.)

Similar considerations apply to proceedings under section 707 of the Welfare and Institutions Code. In 1967 (Stats. 1967, ch. 1357, § 1, p. 3197) the second and last paragraphs were added to section 707 and the first paragraph was amended to include minors 16 years of age, or older, who are charged with misdemeanors as well as felonies. (See fn. 1, *supra*.) Prior to that time it had been generally recognized that ''the very circumstances of the crime which caused defendant to be brought before the juvenile court [could be] of such a character as to fully warrant that court, in the light of other facts shown, in concluding that neither the real interests of defendant, nor the purposes of the juvenile court would be best served by making defendant a ward of the court.'' (*People* v. *Yeager* (1961) 55 Cal.2d 374, 389 [10 Cal.Rptr. 829, 359 P.2d 261]. See also *People* v. *Dotson*

(1956) 46 Cal.2d 891, 896 [299 P.2d 875]; and Report of the Assembly Committee on Criminal Procedure on Delinquency Control, 22 Assembly Interim Com. Report No. 10 (Jan. 1967) p. 20; and cf. *People* v. *Shipp* (1963) 59 Cal.2d 845, 853 [31 Cal.Rptr. 457, 382 P.2d 577] [involving § 604, subd. (b)].)

The 1967 amendment expressly states that "the offense, in itself, shall not be sufficient to support a finding that such minor is not a fit and proper subject to be dealt with under the provisions of the Juvenile Court Law." The People suggest that "the offense, in itself" refers to the nature of the charge as set forth in the petition, and that, when, as here, evidence is introduced showing the aggravated circumstances surrounding the commission of the offenses there is more than just "the offense, in itself." This reading is too narrow. If the evidence failed to show the commission of the offense, the nature of the offense charged would be immaterial. On the other hand, if the evidence shows the commission of the offense it may be considered not solely to establish the heinous nature of the minor's conduct, but to determine, along with other evidence whether the minor would be amenable to the program available through the facilities of the juvenile court.

It is also suggested that since the statute (fn. 1, *supra*) provides that neither the nature of the offense, nor a denial of its commission is sufficient alone to support a finding waiving jurisdiction of the juvenile court, the combination of the two circumstances should be adequate. Whatever weight this argument might otherwise have is dissipated by reference to the last paragraph.

The 1967 amendment reads: "The court shall cause the probation officer to investigate and submit a report on the behavioral patterns of the person being considered for unfitness." The People contend that the history of the adoption of this amendment demonstrates that the language was directory only, and not mandatory, because the language ". . . and the court shall read and include in its order that it has read the probation officer's report" was deleted in the course of an amendment in the Senate. It is equally inferable that the quoted language was omitted as surplusage—despite the fact that similar language is found in section 1203 of the Penal Code.

Section 15 of the Welfare and Institutions Code provides: "'Shall' is mandatory and 'may' is permissive." That the Legislature intended the prescribed procedure to be manda-

tory is evident from the statutory history. The first mention of a social study is found in Assembly Bill No. 1216 introduced March 17, 1967. This bill contained the language "the court *may* order the probation officer to prepare for the use of the court a social study of the minor which shall be available to the court prior to making its finding that the minor is or is not a fit and proper subject to be dealt with under this chapter." (Italics added.) On June 21, 1967, an earlier bill, No. 1098, which had amended section 707 to give the court power to order the criminal prosecution of a minor 16 years of age, or older, for a misdemeanor was amended to include the language contained in Bill No. 1216. The language was altered but the words, "The court *shall* cause the probation officer" etc. (italics added) are found in amendments to Bill No. 1098 on July 13, 1967 in the Assembly, and on July 21, 1967 in the Senate. (It is the second of these amendments that deleted the language referred to in the preceding paragraph of this opinion.) The use of the word "shall" in the amendments as finally adopted must be construed as a specific and intentional selection of the mandatory term.

The People suggest that since the qualifying paragraphs were adopted at the same time that another amendment caused misdemeanants under 18 years of age to be embraced within the scope of the section, those paragraphs should apply only to minors between 16 and 18 who are charged with a misdemeanor. In the absence of any expression in the statute itself to suggest such a distinction, there is no warrant for reading it in from the statutory history, which in fact reflects that the two classes of amendments developed separately and independently.

    It is recognized that the determination of whether petitioner was a fit subject for consideration under the juvenile court law rests within the sound discretion of the juvenile court. (*People* v. *Yeager, supra,* 55 Cal.2d 374, 389; *People* v. *Dotson, supra,* 46 Cal.2d 891, 896; *People* v. *Wolff* (1920) 182 Cal. 728, 732-733 [190 P. 22]; *People* v. *Machado* (1957) 150 Cal.App.2d 190, 196 [309 P.2d 903]; *Knight* v. *Superior Court* (1951) 102 Cal.App.2d 211, 213-214 [227 P.2d 62]; *People* v. *Renteria* (1943) 60 Cal.App.2d 463, 470 [141 P.2d 37].) That discretion must be exercised in accordance and within the framework prescribed by the Legislature.    In the absence of a report in any form on the behavioral pattern of the petitioner the court could not proceed to make the findings upon which its order rested. (See *Richerson* v.

*Superior Court* (1968) 264 Cal.App.2d 729, 734 [70 Cal. Rptr. 350].) "The Legislature's command to the juvenile court to measure amenability to juvenile court system treatment by balancing behavioral patterns in the minor's history against the seriousness of the offense committed has not been heeded. It must be." (*Id.*, p. 735. See also Boches, *Juvenile Justice in California* (1967) 19 Hastings L.Rev. 47, 95-97.)

The People seek to distinguish *Richerson, supra*. It is unnecessary to determine in these proceedings whether *Richerson* involves, as it says (264 Cal.App.2d at p. 732), a failure to exercise discretion or an abuse of discretion with respect to the report actually submitted in that case. Here there was no report or evidence, other than the commission of the crime itself, to show the behavioral patterns of the minor.

Let a peremptory writ of mandate issue directing respondent juvenile court to vacate its order of November 13, 1968 and to proceed in accordance with law and make such further order or orders as may be proper in accordance with the law and the views expressed herein. Let a writ of prohibition issue directing the People to take no further action in any criminal proceeding against petitioner in this matter under the order of November 13, 1968, or otherwise, pending determination of the juvenile court proceedings involving petitioner.

Molinari, P. J., and Elkington, J., concurred.

A petition for a rehearing was denied April 9, 1969, and the petition of the respondent and the real party in interest for a hearing by the Supreme Court was denied May 8, 1969. Mosk, J., was of the opinion that the petition should be granted.