[Crim. No. 1699. Fifth Dist. Apr. 16, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
JOE T., a Minor, Defendant and Appellant.

COUNSEL

W. Thomas Jennings and Ralph E. Boches for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Marjory Winston Parker and Joel E. Carey, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

FRANSON, J.—A petition was filed in the juvenile court alleging that appellant was a person described by section 602 of the Welfare and Institutions Code in that he had committed an assault with a deadly weapon on a peace officer who was engaged in the performance of his duties. (Pen. Code, § 245, subd.(b).)

A hearing pursuant to Welfare and Institutions Code section 707 was scheduled to determine if appellant was a fit and proper subject to be dealt with under the Juvenile Court Law; as required by the statute, the probation officer was ordered to investigate and submit a report on the behavioral patterns of appellant. At the hearing, the referee found that appellant was "unfit" and certified him to the adult court for prosecution.

Thereafter, an information was filed in the superior court charging appellant with a violation of section 245, subdivision (b). He pleaded guilty to a lesser offense of a violation of Penal Code section 245, subdivision (a), assault with a deadly weapon. Probation was denied and appellant was committed to the California Youth Authority.

STATEMENT OF FACTS

Because the issue on appeal relates to the propriety of the juvenile court's finding that appellant was not a fit and proper subject to be dealt with under the Juvenile Court Law, the statement of facts will be limited to those known to the juvenile court at the time of its ruling.

Appellant admitted hitting a California Highway Patrol officer in the face with a tire jack. The offense was committed outside the American Legion Hall at Firebaugh where a dance was being held. Appellant

attended the dance and said he drank the equivalent of 21 twelve-ounce cans of beer. Numerous fights and disturbances had broken out at the dance and there were a number of officers in the area. Appellant said he came out of the dance; a fight was going on; someone threw a jack at him so he picked it up. He hit the officer in order to free a friend that the officer was holding. Appellant said he believed that the cause of his trouble was that he was drunk.

Appellant, who was 17 years 10 months old at the time of the offense, dropped out of school at the age of 16½. He lived at home with his parents; he was employed as a farm laborer when work was available six or seven months a year. He earned approximately $2,200 per year, one-half of which he gave to his parents to assist in the support of his family. He had a girlfriend and wanted to get married. He had considered the military, but he did not feel that he could make it in the service. His parents exercised little, if any, supervision over him. He said he would like to leave home at the first opportunity.

Appellant had a previous juvenile record dating back to 1970; however, none of the offenses had been deemed serious enough to warrant removal from his home. The prior offenses included sniffing paint, possession of alcohol and marijuana and battery on a peace officer. The battery on the officer occurred when appellant and some friends were refused service in a Mendota bar.

Appellant also got into a fight with his cellmate in the Mendota jail on the day after the tire-jack incident. He said it was because the cellmate had hit him the previous night.

Deputy Probation Officer Lopez prepared the behavioral pattern report. While admitting that he was not thoroughly familiar with the Youth Authority program, Lopez said he thought appellant might be amendable to treatment at the Youth Authority. Although he recommended that appellant should be found unfit for juvenile court proceedings, *he had not made a determination that appellant would not be amenable to Youth Authority treatment.* Lopez thought that appellant was not amenable to the programs of the Fresno County Youth Center because the minors there were more immature than appellant; nor did he think that the intensive supervision probation unit was suitable for appellant because it did not serve Mendota where appellant resided.

Ralph Miles, a supervising parole agent employed by CYA for 19 years, testified as a defense expert. He said that about 25 percent of the Youth Authority population had been involved in similar or more serious offenses than appellant and had behavior patterns similar to appellant. He said that commitment to the Youth Authority is not based on the individual's motivation; however, he did not feel qualified to make an evaluation as to whether appellant would benefit from a Youth Authority commitment.

In ruling that appellant was unfit for juvenile court proceedings, the referee made the following comments:

"In essence, I feel that he is acting as an adult. . . . He apparently is self supporting. He is unmarried, however, . . . he [has] undergone some marital counseling . . . and he apparently wants to move from his family's home. . . . [E]ither the parents are unable to control him or else they view him as an adult and able to make his own decisions.

"He has had a number of curfew arrests and he has apparently been driving, periodically at least, without a license. . . .

"The alcoholic use is there. He has been in violation of various court orders and probationary orders . . . *In fact, I know of no training program within the juvenile probation area locally that would be suited to him.*

"Now, a while ago it was mentioned . . . that he is going to CYA. Which way should he go; as an adult or minor? *I don't think it's of concern to me at this sentence hearing* because I do not believe myself that, sitting as a juvenile court referee, I must commit a young person to the California Youth Authority before I can find him unfit. I don't think I have to exhaust everything. I feel that there are circumstances short of commitment to the youth authority that might be very well capable to take this case. . . .

". . . I think the adult court has power that [I] could not have, for example, the power to give a suspended sentence and place on probation and demand that the person involved conform to the provisions of probation. . . .

". . . . . . . . . . . . . . . . . . . .

"I don't feel that, as I say, CYA is necessarily the answer. I think that there are alternatives in the adult court that are not present here. I

cannot find, based upon the reports that are before me, that there is any program *here* within the juvenile division of the probation department, and I cannot find that Joe would be amenable to the care or treatment to be tendered him under any such program." (Italics added.)

## DISCUSSION

Appellant contends that the juvenile court abused its discretion in certifying him to the adult court without finding that he would not be amenable to a Youth Authority commitment *as a juvenile.* We agree.

The decision as to whether a minor is a fit and proper subject to be dealt with under the Juvenile Court Law rests in the sound discretion of the juvenile court. (*Jimmy H.* v. *Superior Court,* 3 Cal.3d 709, 715 [91 Cal.Rptr. 600, 478 P.2d 32].) "Nevertheless, that discretion must be exercised within the framework of the Juvenile Court Law." (*Jimmy H.* v. *Superior Court, supra,* at p. 715.) As long as the issue of amenability to juvenile facilities is properly and fully considered by the juvenile court its decision will not be set aside unless it is not based on substantial evidence. (*Donald L.* v. *Superior Court,* 7 Cal.3d 592, 600-601 [102 Cal.Rptr. 850, 498 P.2d 1098].) However, if *improper criteria* are utilized by the juvenile court in its fitness decision, the order of certification must be vacated. (*Jimmy H.* v. *Superior Court, supra,* at p. 716.)

It is apparent from the referee's comments that the unfitness finding was based only on the following considerations: that appellant was functioning as an adult, that he had been engaged in previous violations of the law, use of alcohol, and had previously violated juvenile probationary orders, that there were no *local* juvenile probationary training programs suited to appellant, and that the adult court would be better able to handle appellant, either through a CYA commitment or by way of probation. While the referee's comments in part are vague and contradictory, the reasonable inference to be drawn therefrom is that the finding of unfitness was based *solely* on the referee's belief that the sentencing alternatives in the adult court would be better suited for appellant than the local treatment programs available through the juvenile court. Thus, we conclude that the referee did not consider appellant's amenability for Youth Authority treatment as a juvenile.

The purpose of the Juvenile Court Law is to secure for each minor under the jurisdiction of the juvenile court such care and guidance as will serve the mental and physical welfare of the minor and the best

interests of the state, and to this end, the law is to be liberally construed to protect the minor. (Welf. & Inst. Code, § 502.)

Under Welfare and Institutions Code section 707,[1] a minor 16 years of age or older can be certified to the adult court when there is substantial evidence that he would not be amenable to the care, treatment and training program available "through the facilities of the juvenile court." Contrary to the apparent misapprehension of both the probation officer and the referee, the Youth Authority must be deemed a facility available to the juvenile court; therefore, under the mandate of section 707, the minor's amenability to a Youth Authority commitment as a juvenile must be considered and rejected before he can be found unfit for handling as a juvenile.

As appellant has pointed out, where an older juvenile is charged with a serious crime, the only practical alternatives are commitment to the Youth Authority or certification to the adult court. (See *Donald L.* v. *Superior Court, supra,* 7 Cal.3d 592 [102 Cal.Rptr. 850, 498 P.2d 1098]; *Bryan* v. *Superior Court,* 7 Cal.3d 575 [102 Cal.Rptr. 831, 498 P.2d 1079]; *People* v. *Smith,* 5 Cal.3d 313 [96 Cal.Rptr. 13, 486 P.2d 1213]; *Jimmy H.* v. *Superior Court, supra,* 3 Cal.3d 709; *In re Clarence B.,* 37 Cal.App.3d 676 [112 Cal.Rptr. 474]; cf. *In re J.L.P.,* 25 Cal.App.3d 86 [100 Cal.Rptr. 601].) The juvenile court's failure to consider sending appellant to the Youth Authority as a juvenile resulted in a denial to appellant of the benefits of treatment as a juvenile and the disadvantages of a felony conviction: he is subject to the control of the Youth Authority until he reaches age 25 instead of age 21 (Welf. & Inst. Code, §§ 1769, 1800 et seq.);[2] he cannot have his record sealed under Welfare and Institutions

---

[1]Welfare and Institutions Code section 707 provides in pertinent part: "At any time during a hearing upon a petition alleging that a minor is, by reason of violation of any criminal statute or ordinance, a person described in Section 602, when substantial evidence has been adduced to support a finding that the minor was 16 years of age or older at the time of the alleged commission of such offense *and that the minor would not be amenable to the care, treatment and training program available through the facilities of the juvenile court,* or if, at any time after such hearing, a minor who was 16 years of age or older at the time of the commission of an offense and who was committed therefor by the court to the Youth Authority, is returned to the court by the Youth Authority ... , the court may make a finding noted in the minutes of the court that the minor is not a fit and proper subject to be dealt with under this chapter, and the court shall direct the district attorney ... to prosecute the person under the applicable criminal statute. ... " (Italics added.)

[2]If the determinative factor in the unfitness finding is the possibility of the Youth Authority having to treat the minor beyond his age of majority, and if there is substantial evidence in the record that successful treatment might require extra time, the finding will be upheld. (*Jimmy H.* v. *Superior Court, supra,* 3 Cal.3d 709, 715.) However, there is no contention that such a factor was considered or determined in the present case.

Code section 781; he is subject to a two-year minimum term in state prison for a subsequent felony conviction; and his conviction can be ground for a denial or revocation of state employment. (Gov. Code, §§ 18935, subd. (f), and 19572, subd. (k).)

Welfare and Institutions Code section 780 supports a rule that the juvenile court must consider and reject Youth Authority treatment before certifying a minor to the adult court. That section provides that the Youth Authority may return to the committing court any person who is incorrigible, incapable of reformation, or otherwise an improper person to be retained in the Youth Authority facility. If the juvenile court is mistaken in its evaluation of the minor's amenability to Youth Authority treatment, the mistake can be rectified by the return of the minor and certification to the adult court for criminal proceedings. (See Welf. & Inst. Code, § 707; *Bryan* v. *Superior Court, supra,* 7 Cal.3d 575; but see *Jones* v. *Breed* (9th Cir.) 497 F.2d 1160, cert. granted in 419 U.S. 894 [42 L.Ed.2d 138, 95 S.Ct. 172].)

We recognize that the standards for determining a minor's fitness for treatment as a juvenile lack explicit definition (*Jimmy H.* v. *Superior Court, supra,* 3 Cal.3d 709, 714) and that the juvenile court's statement of reasons for finding the minor unfit need not include conventional findings of fact. (*Kent* v. *United States* (1966) 383 U.S. 541, 561 [16 L.Ed.2d 84, 97, 86 S.Ct. 1045].) Moreover, we recognize that there probably is substantial evidence in the record to support a finding that appellant is not amenable to a Youth Authority treatment as a juvenile. However, because the referee's comments at the time of the unfitness hearing clearly demonstrate that a Youth Authority commitment as a juvenile was excluded from consideration, we cannot uphold the finding of unfitness.[3]

Because a proper finding of unfitness is a jurisdictional requirement for a minor's prosecution in the adult court, the prosecution in the case at hand is a nullity. (Welf. & Inst. Code, §§ 604, 707.)

The judgment of conviction is reversed. The matter is remanded to the juvenile court for reconsideration and a finding as to appellant's

---

[3]While we agree with the statement in *People* v. *Browning,* 45 Cal.App.3d 125, 139 [119 Cal.Rptr. 420], that the People are not required to demonstrate affirmatively that none of the various treatment options available through the juvenile court system and the Youth Authority would be adequate to serve the minor's needs and the best interests of society, unlike *Browning,* because of the referee's comments, we are unable to imply that the referee found the Youth Authority program to be inadequate.

amenability or nonamenability to the care, treatment and training program available through the facilities of the juvenile court, including a Youth Authority commitment as a juvenile.

Gargano, Acting P. J., and Thompson, J.,* concurred.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.