[Crim. No. 13277. First Dist., Div. One. Jan. 16, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
RONALD EDWARD ALLGOOD, Defendant and Appellant.

## COUNSEL

Sheldon Portman, Public Defender, Richard Such, Deputy ·Public Defender, and Michael S. Wald for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert R. Granucci and Harriet Wiss Hirsch, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SIMS, J.**—Defendant, having secured a certificate of probable cause to do so (Pen. Code, § 1237.5, Cal. Rules of Court, rule 31(d)), has appealed from a judgment of conviction under which he was committed to the California Youth Authority (Welf. & Inst. Code, § 1731.5) following his plea of guilty to murder in violation of section 187 of the Penal Code, fixed as of the second degree (§ 189) by stipulation.[1] A minor, some 7 weeks under the age of 18 at the time of the commission of the offense, he seeks review of two orders of the juvenile court, which respectively, first, found him not a fit and proper subject to be dealt with under the Juvenile Court Law and directed the district attorney to prosecute him under the applicable criminal statute, as provided in section 707 of the Welfare and Institutions Code,[2] and, second, denied his petition for a rehearing on that decision. He also seeks review of an order of the sentencing court which denied his petition for remand to the juvenile court.

---

[1]Following defendant's unsuccessful attempts to have his prosecution remanded to the juvenile court, which are reviewed herein, he interposed motions to suppress evidence (Pen. Code, § 1538.5) to dismiss the indictment (Pen. Code, § 995), and to suppress his extrajudicial statements. These motions were all denied. Thereafter defendant entered his plea. On this appeal he has not sought review of the orders denying those motions.

[2]Section 707 provides: "At any time during a hearing upon a petition alleging that a minor is, by reason of violation of any criminal statute or ordinance, a person described in Section 602, when substantial evidence has been adduced to support a finding that the minor was 16 years of age or older at the time of the alleged commission of such offense and that the minor would not be amenable to the care, treatment and training program available through the facilities of the juvenile court, or if, at any time after such hearing, a minor who was 16 years of age or older at the time of the commission of an offense and who was committed therefor by the court to the Youth Authority, is returned to the court by the Youth Authority pursuant to Section 780 or 1737.1, the court may make a finding noted in the minutes of the court that the minor is not a fit and proper subject to be dealt with under this chapter, and the court shall direct the district attorney or other appropriate prosecuting officer to prosecute the person under the applicable criminal statute or ordinance and thereafter dismiss the petition or, if a prosecution has been commenced in another court but has been suspended while juvenile court proceedings are held, shall dismiss the petition and issue its order directing that the other court proceedings resume. In determining whether the minor is a fit and proper subject to be dealt with under this chapter, the offense, in itself, shall not be sufficient to support a finding that such minor is not a fit and proper subject to be dealt with under the provisions of the Juvenile Court Law. A denial by the person on whose behalf the petition is brought of any or all of the facts or conclusions set forth therein or of any inference to be drawn therefrom is not, of itself, sufficient to support a finding that such person is not a fit and proper subject to be dealt with under the provisions of the Juvenile Court Law. [¶] The court shall cause the probation officer to investigate and submit a report on the behavioral patterns of the person being considered for unfitness."

Effective January 1, 1976, the foregoing provisions were repealed. (Stats. 1975, ch. 1266, § 3, p. —.) Added to the Welfare and Institutions Code were a new section 707, and sections 707.1, 707.2, 707.3 and 707.4. These sections relate to findings of unfitness with

On review of the judgment from which the appeal has been taken we may review the rulings of the court which lead to that judgment. (Pen. Code, § 1259.)  ▇  We conclude that there was no error or abuse of discretion in denying defendant's motion to remand the proceedings to the juvenile court.

We entertain some doubt as to whether the earlier orders of the juvenile court may be reviewed on this appeal from the judgment of the superior court in a regular criminal proceeding. It would appear that review of the juvenile court's orders would more properly be by a petition for extraordinary writ, if an appeal therefrom was not available or was an inadequate remedy. (See *People* v. *Browning* (1975) 45 Cal.App.3d 125, 140-141 [119 Cal.Rptr. 420]; *In re Brekke* (1965) 233 Cal.App.2d 196, 197-200 [43 Cal.Rptr. 553] [hg.den. May 19, 1965]; and Cal. Juvenile Court Practice (Cont. Ed. Bar 1968) § 140, pp. 128-129. Cf. *Agnew* v. *Superior Court* (1953) 118 Cal.App.2d 230, 233-234 [257 P.2d 661].)[3] In fact, following the denial of his motion in the superior court

---

respect to minors who allegedly violated a criminal statute or ordinance when 16 years of age or older, and the criteria to be used, and the procedures to be followed in such matters. (*Id.*, §§ 4, 5, 6, 7 and 8, pp. ——. Cf. S.B. 234, as referred to in *People* v. *Superior Court (Carl W.)* (1975) 15 Cal.3d 271, fn. 12 [124 Cal.Rptr. 47, 539 P.2d 807].) In view of the conclusions reached in the above opinion it is unnecessary to determine whether those amendments render the subject proceedings moot in the sense that the new criteria would govern in the event the minor's contentions were upheld in this case.

[3]In *Agnew* v. *Superior Court* (1953) 118 Cal.App.2d 230 [257 P.2d 661], the minor appealed from an order finding him an unfit subject for consideration by the juvenile court and referring the case to a municipal court for prosecution under the general law. The order was made *after* the juvenile court had made its order declaring the accused a ward of the court. The appellate court upheld the appeal and granted a writ restraining the criminal court from proceeding until the appeal was resolved. The appeal was sanctioned under the provisions of the Juvenile Court Law providing "any subsequent order may be appealed from as from an order after judgment. . . ." (118 Cal.App.2d at pp. 233-235. See Welf. & Inst. Code, § 800 [formerly § 580]; and *In re Corey* (1964) 230 Cal.App.2d 813, 820-822 [41 Cal.Rptr. 379].) It has been since held that the prosecution of a minor in the criminal court after an adjudicatory hearing in the juvenile court violates "the Double Jeopardy Clause of the Fifth Amendment, as applied to the States through the Fourteenth Amendment." (*Breed* v. *Jones* (1975) 421 U.S. 519, 541 [44 L.Ed.2d 346, 362, 95 S.Ct. 1779]. See also *Donald L.* v. *Superior Court* (1972) 7 Cal.3d 592, 596-598 [102 Cal.Rptr. 850, 498 P.2d 1098]; and cf. *Bryan* v. *Superior Court* (1972) 7 Cal.3d 575, 580-584 [102 Cal.Rptr. 831, 498 P.2d 1079] [cert. den. (1973) 410 U.S. 944 [35 L.Ed.2d 610, 93 S.Ct. 1380]]; and *In re Gary J.* (1971) 17 Cal.App.3d 704, 709-710 [95 Cal.Rptr. 185].) Therefore, the question raised in *Agnew* v. *Superior Court, supra,* should not again arise.

In *People* v. *Browning, supra,* 45 Cal.App.3d 125, the court concluded, "Further, the People do not question that such a finding may be reviewed on an appeal from an ensuing criminal conviction. Two avenues of review are enough." (45 Cal.App.3d at p. 141.) It is generally recognized that an order under section 707 ordering prosecution under the applicable criminal statute or ordinance is reviewable by writ. (See *Donald L.*

criminal proceedings, the defendant did seek review of all three orders by a petition for writ of mandate and for a writ of prohibition filed with this court (No. 1 Civ. 34288). That petition was denied December 19, 1973, and a hearing was denied by the Supreme Court of California on January 3, 1974. Thereafter, defendant entered his plea of guilty (see fn. 1 above). In order to bring before the court the record of the proceedings before the juvenile court, we have augmented the record on this appeal by including the exhibits filed in connection with the earlier petition for relief. We would be disposed to let the matter rest as beyond the scope of this appeal were it not for the fact that defendant now claims that he was deprived of the effective assistance of counsel at the original hearing in the juvenile court, and the additional consideration that the Attorney General has not questioned the defendant's right to review, but has replied to the issues raised in defendant's brief, and joined with him in referring to the earlier record (see fn. 3 above). Since refusal to review on procedural grounds would only relegate the defendant to a further application for extraordinary relief—this time for ineffective counsel in the original juvenile court proceedings—we have reviewed defendant's contentions concerning the alleged errors of the juvenile court and find them to be without merit. The judgment must be affirmed.

I

The charges in this case arise out of the defendant's admitted strangulation of his mother on October 2, 1973. On October 5, 1973, a petition was filed in the juvenile court alleging that defendant, who was born November 20, 1955, came within the provisions of section 602 of the Welfare and Institutions Code in that he had violated section 187 of

v. *Superior Court, supra,* 7 Cal.3d 592, 595; *Bryan v. Superior Court, supra,* 7 Cal.3d 575, 577; *Alfred B. v. Superior Court* (1970) 3 Cal.3d 718, 719 [91 Cal.Rptr. 605, 478 P.2d 37]; *Jimmy H. v. Superior Court* (1970) 3 Cal.3d 709, 713 [91 Cal.Rptr. 600, 478 P.2d 32]; *Juan T. v. Superior Court* (1975) 49 Cal.App.3d 207 [122 Cal.Rptr. 405]; *Bruce M. v. Superior Court* (1969) 270 Cal.App.2d 566, 567 [75 Cal.Rptr. 881]; *Richerson v. Superior Court* (1968) 264 Cal.App.2d 729, 731 [70 Cal.Rptr. 350]; and *Knight v. Superior Court* (1951) 102 Cal.App.2d 211, 212 [227 P.2d 62].) On occasion resort has been had to habeas corpus. (See *Breed v. Jones, supra,* 421 U.S. 519, 523-525 [44 L.Ed.2d 346, 352]; and *In re Gary J., supra,* 17 Cal.App.3d 704, 707, fn. 4.) It appears to be assumed that the validity of the juvenile court's order authorizing proceedings in the criminal court may be reviewed on appeal from a judgment of conviction in the latter proceedings. (See *People v. Joe T.* (1975) 48 Cal.App.3d 114, 119-122 [121 Cal.Rptr. 329]; *People v. McFarland* (1971) 17 Cal.App.3d 807, 811-819 [95 Cal.Rptr. 369]; *People v. Brown* (1970) 13 Cal.App.3d 876, 879-882 [91 Cal.Rptr. 904] [cert. den. (1971) 404 U.S. 835 [30 L.Ed.2d 66, 92 S.Ct. 120]]; and *People v. Arauz* (1970) 5 Cal.App.3d 523, 527-530 [85 Cal.Rptr. 266].) For reasons set forth in the text it is unnecessary to evaluate this assumption in these proceedings.

the Penal Code. On October 25, 1973, following a hearing in which the defendant was represented by a retained attorney, the juvenile court made the original order of which complaint is made. The following day a complaint was filed in a municipal court charging the defendant with murder, and he was arraigned on that offense. Before further proceedings were taken, an indictment charging the same offense was returned by the grand jury. The defendant was arraigned on that indictment on November 14, 1973. A plea of not guilty was entered by the court on his behalf, the public defender was appointed to represent him, in place of his retained attorney who had withdrawn from the case, and the matter was set for jury trial in January 1974.

The same day the defendant filed in juvenile court his motion to set aside the finding embodied in that court's earlier order, and for a rehearing on that matter. On November 16, 1973, the juvenile court denied that motion, giving rise to the second order of which defendant complains.

On November 23, 1973, the defendant filed in the superior court criminal action his motion for certification to the juvenile court pursuant to section 604 of the Welfare and Institutions Code.[4] A hearing was held on November 30, 1973, and the motion was denied on December 3, 1973.

---

[4]This section provides: "(a) Whenever a case is before any court upon an accusatory pleading and it is suggested or appears to the judge before whom such person is brought that the person charged was, at the date the offense is alleged to have been committed, under the age of 18 years, such judge shall immediately suspend all proceedings against such person on such charge; he shall examine into the age of such person, and if, from such examination, it appears to his satisfaction that such person was at the date the offense is alleged to have been committed under the age of 18 years, he shall forthwith certify to the juvenile court of his county: [¶] (1) That such person (naming him) is charged with such crime (briefly stating its nature); [¶] (2) That such person appears to have been under the age of 18 years at the date the offense is alleged to have been committed, giving date of birth when known; [¶] (3) That proceedings have been suspended against such person on such charge by reason of his age, with the date of such suspension. [¶] To such certification, the judge shall attach a copy of the accusatory pleading [¶] (b) When a court certifies a case to the juvenile court pursuant to subdivision (a), it shall be deemed that jeopardy has not attached by reason of the proceedings prior to certification, but the court may not resume proceedings in the case, nor may a new proceeding under the general law be commenced in any court with respect to the same matter unless the juvenile court has found that the minor is not a fit subject for consideration under the Juvenile Court Law and has ordered that proceedings under the general law resume or be commenced. [¶] (c) The certification and accusatory pleading shall be promptly transmitted to the clerk of the juvenile court. Upon receipt thereof, the clerk of the juvenile court shall immediately notify the probation officer who shall file a petition in accordance with the requirements of Section 656, except that such petition need not be verified."

Thereafter, defendant took the unsuccessful proceedings for review which have been referred to above.

Examination of the provisions of section 604 reflects that it requires any court (other than the juvenile court) to immediately suspend proceedings upon an accusatory pleading when it appears to the satisfaction of the judge that the person charged was under the age of 18 years at the date the offense is alleged to have been committed. ■ No discretion is involved; upon making such a finding and suspension the proceedings must be certified to the juvenile court. (See *People* v. *Murphy* (1963) 59 Cal.2d 818, 833-834 [31 Cal.Rptr. 306, 382 P.2d 346]; and *People* v. *Yeager* (1961) 55 Cal.2d 374, 385-387 [10 Cal.Rptr. 829, 359 P.2d 261].) Proceedings cannot be resumed or commenced "unless the juvenile court has found that the minor is not a fit subject for consideration under the Juvenile Court Law and has ordered that proceedings under the general law resume or be commenced." ■ It is apparent that the provisions of section 604 must be construed with those of section 707. When one does so it is obvious that proceedings under section 604 are not applicable when the juvenile court has already ordered that proceedings under the general law be commenced.

Defendant asserts that if it is shown to the criminal court judge that the fitness hearing in the juvenile court was inadequate on its factual basis and in its legal premise, there is no impediment to his certifying the case back to the juvenile court for a proper hearing. He acknowledges that there is no precedent for recertifying the proceedings to the juvenile court under the provisions of section 604. He claims the court should be able to do so under an "inherent power . . . to conform its procedures to the fundamentals of due process." (See *People* v. *Clark* (1968) 264 Cal.App.2d 44, 46 [70 Cal.Rptr. 324].) He asserts that a review of the order of the juvenile court is no different from a permitted request for reconsideration in the same court. (See Code Civ. Proc., § 1008.) The latter contention disregards the distinction between the juvenile court and the superior court. ■ Section 782 of the Welfare and Institutions Code, not section 604 of that code or section 1008 of the Code of Civil Procedure, governs the right to rehearing in the juvenile court. There is no need to invent new procedural remedies for review of a fitness order of the juvenile court. The aggrieved party has a right to review by a petition for an extraordinary writ. (See fn. 3 above, and accompanying text.) In fact defendant ultimately unsuccessfully sought such relief. He was not denied due process of law.

In *People* v. *Browning, supra,* it was contended that the validity of the finding of unfitness could be reviewed by a motion to dismiss the proceedings under section 995 of the Penal Code because the minor was not "legally committed." The court concluded, "It would be entirely inappropriate for a magistrate to question the validity of a juvenile court's finding of unfitness under section 707. How a grand jury would even start to go about it, we cannot imagine. Clearly then a motion to set aside an indictment or an information made under section 995 of the Penal Code could not reach an improper or invalid juvenile court order. [¶] Quite apart from these procedural niceties, it would not be in the interest of speedy and orderly administration of criminal justice to sanction an additional avenue of review of juvenile court orders under section 707, by holding that the superior court has some nonstatutory power to dismiss on the ground that it thinks the juvenile court acted illegally. [Citation.] In case of continued disagreement we would eventually be called on to arbitrate the squabble. No such detour to this court is called for. The law seems plain enough. Although a finding of unfitness is not appealable [citation], it is reviewable by writ. [Citations.] Further, the People do not question that such a finding may be reviewed on an appeal from an ensuing criminal conviction. Two avenues of review are enough." (45 Cal.App.3d at p. 141.)

██ The trial court properly recognized that it had no power to review the order of the juvenile court which had directed that proceedings under the general law be commenced, and it did not err in denying defendant's motion to remand the proceedings to the juvenile court.

## II

Because many special protections are accorded to juveniles[5] the determination of whether the juvenile accused of crime is to remain under the jurisdiction of the juvenile court is of critical importance. (See

[5]In *People* v. *Joe T., supra,* 48 Cal.App.3d 114, the court observed, ". . . where an older juvenile is charged with a serious crime, the only practical alternatives are commitment to the Youth Authority or certification to the adult court. [Citations.] The juvenile court's failure to consider sending appellant to the Youth Authority as a juvenile resulted in a denial to appellant of the benefits of treatment as a juvenile and the disadvantages of a felony conviction: he is subject to the control of the Youth Authority until he reaches age 25 instead of 21 [citation]; he cannot have his record sealed under Welfare and Institutions Code section 781; he is subject to a two-year minimum term in state prison for a subsequent felony conviction; and his conviction can be ground for a denial or revocation of state employment. [Citation.]" (48 Cal.App.3d at pp. 120-121, fn. omitted.)

Moreover, the minor in juvenile court is protected from publicity (Welf. & Inst. Code, §§ 675-676), and from being detained in a jail or lockup (*id.,* § 507).

*Kent* v. *United States* (1966) 383 U.S. 541, 553 and 560-561 [16 L.Ed.2d 84, 92-93, 96-97, 86 S.Ct. 1045]; Cal. Juvenile Court Practice, *supra,* § 136, p. 125; and Clayman, *Fitness the Critical Hearing of the Juvenile Court, Symposium Juvenile Justice* (1975) 50 L.A. Bar Bull. 133, 134.) ■ It is recognized that the basic requirements of due process must be accorded the accused juvenile in a proceeding to determine whether he is a fit and proper person to be dealt with under the Juvenile Court Law. (*In re Gault* (1967) 387 U.S. 1 [18 L.Ed.2d 527, 87 S.Ct. 1428]; *Kent* v. *United States* (1966) 383 U.S. 541, 553-554 [16 L.Ed.2d 84, 92-94, 86 S.Ct. 1045]; *Donald L.* v. *Superior Court* (1972) 7 Cal.3d 592, 597 and 599 [102 Cal.Rptr. 850, 498 P.2d 1098]; and *In re Harris* (1967) 67 Cal.2d 876, 878-879 [64 Cal.Rptr. 319, 434 P.2d 615].) Except insofar as he argues that his counsel was ineffective (see part III below) defendant does not deny that he was granted notice, and a hearing with counsel. (See *People* v. *Brown* (1970) 13 Cal.App.3d 876, 882 [91 Cal.Rptr. 904].)

The gravamen of defendant's complaint is that the juvenile court relied on inadequate evidence and inappropriate factors in concluding that petitioner was not a fit and proper subject to be dealt with under the juvenile court law, because there was insufficient evidence in the case to show that the defendant was unamenable to treatment through the facilities available to the juvenile court, and because the juvenile court disregarded the availability and possibility of treatment programs outside the home, and based its conclusion on the alleged emancipation of the minor defendant. As a lesser postulate, the defendant suggests that the law should provide that, in the absence of compelling evidence to the contrary, a juvenile should be presumed amenable to treatment unless he has previously failed to respond to the treatment afforded by the juvenile court.

-A-

In support of the presumption he advocates, defendant argues that since society has no complete or definitive knowledge of how to treat law violators successfully, or how to predict future behavior, it is irrational to find a person unamenable to treatment until that treatment is attempted. Under that theory no first offender could be referred to the general criminal court. Section 707 contains no such limitations.

He also points out that it has been judicially recognized that the testimony of experts as to whether a minor can be treated in juvenile facilities should be given "great weight." (*Jimmy H.* v. *Superior Court*

(1970) 3 Cal.3d at p. 714 [91 Cal.Rptr. 600, 478 P.2d 32].) He notes that in many cases where a transfer to regular criminal procedures has been reviewed and sustained, the accused had in fact a long history of delinquent conduct with unsuccessful attempted treatment under auspices of the juvenile court. (See, e.g., *Donald L.* v. *Superior Court, supra,* 7 Cal.3d 592, 600-601; *People* v. *McFarland, supra,* 17 Cal.App.3d 807, 812-813 and 817-819; and *People* v. *Arauz* (1970) 5 Cal.App.3d 523, 528-529 [85 Cal.Rptr. 266].) Conversely the absence of such prior attempts at treatment may be a factor in overturning such a transfer. (See, e.g., *Richerson* v. *Superior Court* (1968) 264 Cal.App.2d 729, 732-734 [70 Cal.Rptr. 350].) He finally suggests that in the absence of such a presumption section 707 may be subject to attack as unconstitutional because inherently vague. (Cf. *People* v. *Fields* (1972) 388 Mich. 66, 77 [199 N.W.2d 217, 222], with *Donald L.* v. *Superior Court, supra,* 7 Cal.3d 592, 601.)

In *Jimmy H.* v. *Superior Court, supra,* the court noted, "Some commentators suggest that there ought to be a presumption of fitness for treatment as a juvenile. (Cal. Juvenile Court Practice (Cont. Ed. Bar 1968) § 137, p. 126; Boches, *Juvenile Justice in California: A Re-evaluation* (1967) 19 Hastings L.J. 47, 96.)" (3 Cal.3d at p. 715, fn. 3.) In the former publication the author suggested that the probation officer and the court have the burden of producing evidence and making findings that the subject is not amenable. (Cal. Juvenile Court Practice, *supra,* § 137, p. 126.) The latter commentator proposed a statutory presumption enacted by the Legislature. Section 707 has not been so amended. In fact the Legislature has dealt with certain criteria and the weight to be given them. The statute provides that "the offense, in itself, shall not be sufficient to support a finding" adverse to the minor, and that "a denial by the person . . . is not, of itself, sufficient" to support such a finding. It further requires that "a report on the behavioral patterns of the person being considered for unfitness" be submitted by the probation officer after investigation.

■ We conclude that the amenability to any particular form of treatment is merely a factor to be considered under the general principles reviewed below, and that there is no presumption of fitness because the accused has never been subject to treatment previously ordered by the juvenile court. (See *People* v. *Browning, supra,* 45 Cal.App.3d 125, 138-139.)

-B-

"There must be substantial evidence adduced at the hearing that the minor is not a fit and proper subject for treatment as a juvenile before the court may certify him to the superior court for prosecution. [Citations.]" (*Jimmy H.* v. *Superior Court, supra,* 3 Cal.3d 709, 715. See also *People* v. *Joe T.* (1975) 48 Cal.App.3d 114, 119 [121 Cal.Rptr. 329]; and *Bruce M.* v. *Superior Court* (1969) 270 Cal.App.2d 566, 573-574 [75 Cal.Rptr. 881].)

The courts have recognized the general grounds of decision prescribed by the statute, and require that the basis of the decision be a determination "that the minor would not be amenable to the care, treatment and training program available through the facilities of the juvenile court, . . ." (Welf. & Inst. Code, § 707. See *Donald L.* v. *Superior Court, supra,* 7 Cal.3d 592, 600-601; *Jimmy H.* v. *Superior Court, supra,* 3 Cal.3d 709, 714; and *People* v. *Joe T., supra,* 48 Cal.App.3d 114, 119.) In *Donald L.* v. *Superior Court, supra,* the court reasoned, "Since proper operation of the Juvenile Court Law is predicated on treating each minor as an individual [citation] any attempt to explicate the standards with greater particularity appears not merely unnecessary but undesirable as likely to set up mechanical categories which the spirit of the law forbids." (7 Cal.3d at p. 601, fn. omitted.)

Nevertheless the courts have alluded to several factors which should properly be taken into account. "Though the standards for determining a minor's fitness for treatment as a juvenile lack explicit definition [citations], it is clear from the statute that the court must go beyond the circumstances surrounding the offense itself and the minor's possible denial of involvement in such offense. [Citations.] The court may consider a minor's past record of delinquency [citations] and *must* take into account his behavior pattern as described in the probation officer's report. [Citations.] [¶] Testimony of expert witnesses may also provide guidance for the court's decision on the fitness of a minor for treatment as a juvenile. [Citation.] Since the dispositive question is the minor's amenability to treatment through the facilities available to the juvenile court, testimony of experts that the minor can be treated by those facilities is entitled to great weight in the court's ultimate determination." (*Jimmy H.* v. *Superior Court, supra,* 3 Cal.3d 709, 714-715.) "Other factors which may be considered by the juvenile court in the exercise of its discretion in certifying a minor to the superior court as not amenable to treatment as a juvenile are the following: the nature of the crime

allegedly committed, the circumstances and details surrounding its commission, the minor's behavior pattern including his past record, if any, of delinquency, his degree of sophistication especially as the same may relate to criminal activities and contradictory opinion testimony. [Citations.]" (*Id.*; pp. 715-716. See also *People* v. *Smith* (1971) 5 Cal.3d 313, 317-318 [96 Cal.Rptr. 13, 486 P.2d 1213]; and *Juan T.* v. *Superior Court* (1975) 49 Cal.App.3d 207, 211-212 [122 Cal.Rptr. 405].) The ultimate question of whether the minor is or is not a fit and proper subject to be dealt with under the provisions of the juvenile court law rests within the sound discretion of the juvenile court. (*Jimmy H.* v. *Superior Court, supra,* 3 Cal.3d 709, 715; *People* v. *Yeager, supra,* 55 Cal.2d 374, 389; *People* v. *Joe T., supra,* 48 Cal.App.3d 114, 119; *People* v. *Browning, supra,* 45 Cal.App.3d 125, 140; and *Bruce M.* v. *Superior Court, supra,* 270 Cal.App.2d 566, 573.) The behavioral report is the only form of evidence mandated by the statute (Welf. & Inst. Code, § 707) and it may suffice to sustain the court's finding and order. (See *Donald L.* v. *Superior Court, supra,* 7 Cal.3d 592, 599; *People* v. *Smith, supra,* 5 Cal.3d 313, 317-318; and *Jimmy H.* v. *Superior Court, supra,* 3 Cal.3d 709, 714.)

Defendant asserts that the juvenile court should make express findings that it has considered and rejected all treatment alternatives available under the juvenile court program. (See *Haziel* v. *United States* (1968) 404 F.2d 1275, 1280 [131 App.D.C. 298]; *P.H.* v. *State* (Alaska 1972) 504 P.2d 837, 845-846; *State* v. *Yard* (1973) 109 Ariz. 198, 201-202 [507 P.2d 123, 126-127]; *In re Patterson* (1972) 210 Kan. 245, 248-249 [499 P.2d 1131, 1134-1136]; and *Atkins* v. *State* (1972) 259 Ind. 596, 599-600 [290 N.E.2d 441, 443-444].) The People concede that the behavioral pattern report does not expressly refer to alternative treatment programs, and the record of the hearing only refers to some of the programs that the court may have considered. ■ Section 707 does not require an express finding on each possible treatment plan. (*People* v. *Browning, supra,* 45 Cal.App.3d 125, 139.) The court's determination that the minor is not a fit and proper person to be dealt with under the juvenile court law carries with it the implied finding that he is not amenable to the care, treatment and training program available through the facilities of the juvenile court. (See *People* v. *Yeager, supra,* 55 Cal.2d 374, 387; and *People* v. *Arauz, supra,* 5 Cal.App.3d 523, 527-528.) Although the minor may be entitled to a statement of the reasons for the juvenile court's decision (see *Kent* v. *United States, supra,* 383 U.S. 541, 561 [16 L.Ed.2d 84, 97]; *Juan T.* v. *Superior Court, supra,* 49 Cal.App.3d 207, 210-211; *People* v. *Browning, supra,* 45 Cal.App.3d 125, 137-138; and *Bruce M.* v. *Superior*

*Court, supra,* 270 Cal.App.2d 566, 571), the statement of these reasons cannot be treated as eviscerating, by omission, a finding predicated on sufficient evidence.[6] (Cf. part III below.)

The probation report, the primary source of information for the court, first described the circumstances of the crime and defendant's behavior. The defendant's mother was found strangled in the back seat of her car parked behind Denny's Restaurant in Milpitas on October 2, 1973. She was discovered by defendant, his sister and a friend of hers after they found her absent from the house. They went to Denny's because defendant's parents, though divorced, sometimes met at Denny's or Travelodge. The three young people checked both places until the mother's car was found. The father however produced a verified alibi. The police detectives then examined the house and found in the garage, where defendant had been working on his motorcycle, terrycloth towel strips similar to those found wound round the victim's neck, some of which matched the pattern. Defendant told the detective he used the strips to clean his motorcycle. In the yard behind the garage, the detective found yard debris similar to that found on the victim, as well as two slippers, one in the yard and another by the garage door. Meanwhile, she saw defendant shuffling and rearranging the debris. In defendant's bedroom, shared with his sister's friend, the detective found levis and a towel with apparent bloodstains on them. She also found a piece of towel matching that found on the victim in defendant's closet.

At the police station, defendant admitted strangling his mother and driving her car containing the body to Denny's, where he locked it and walked home. He then inquired of his sister and her friend where the mother was. After a few minutes, all three proceeded to search for her.

A psychiatrist, Dr. Shores, examined defendant a day later. He found him mentally normal, not suffering intellectual or psychiatric impairment or diminished capacities.

The probation report's social study showed that defendant had had three contacts with the Fresno Juvenile Probation Department: a referral

---

[6]In *Juan T.* v. *Superior Court, supra,* 49 Cal.App.3d 207, decided since this case was briefed, the court ruled: ". . . it is essential that the juvenile court state its reasons that a minor is not a fit and proper subject for treatment under the juvenile court law." (49 Cal.App.3d at p. 211.) Since that case was written by the same judge who wrote *People* v. *Browning, supra,* and since he reiterates that the latter case rejected the contention that formal findings of fact are required (*id.*), we do not believe it overrules the conclusions expressed above.

letter from Arizona about defendant's arrest for drinking; citation for malicious mischief for suspicion of throwing eggs at a car; and arrest by the police for petty theft. No action was taken by the authorities on any of these matters. He was reported a runaway by his father once, but returned home the next day. Defendant's own statement showed that he worked briefly in Clovis in 1973, then returning to Milpitas where he began to work in July, earning $2.50 per hour and paying room and board while living at home. He said he wanted to finish high school.

The father's statement said that he would stand by his son through this matter, though noting that his children expressed very little affection toward him. The personal and family report showed the father as unemployed and living apart from his family. After several separations the parents were divorced in January 1973. The children lived with the mother and maternal grandmother. The school report showed that defendant had only a semester left in high school, where he was a good student and never in trouble. The juvenile hall report showed him well adjusted to the situation after his placement there. He was cooperative, easy-going and accepted by the others. His employer reported that he performed his work with responsibility and maturity. At the time of the crime the appellant was about seven weeks short of his eighteenth birthday. The probation report recommended that he be remanded to the adult court.

The probation report was received in evidence at the original hearing in the juvenile court. It also appears from the record that at a prior discussion in chambers the minor's retained attorney apparently made an offer of proof, and was advised by the court that such evidence would not alter the court's opinion that the recommendation contained in the probation report should be accepted. Accordingly the attorney did not call the minor's father to the stand, but made an offer of proof concerning the testimony of the minor's father. It showed that during the time the parents lived together, there were troubles in the home between them, subjecting the children to an unstable environment, particularly because of the temperament of the deceased. She favored the daughter over the son, and accused him of being crazy like his father, refused to take him into her confidence and put him down at all times. She ranted and raved at both father and son and refused to permit the boy to make independent decisions. She undermined the father's authority and refused to permit him to participate in raising the son. The boy did not develop a normal emotional capacity, though he competed in school and working world with other adults.

The attorney suggested the juvenile authorities would exercise a good influence over the minor and he should be determined a fit subject for the juvenile court.

The probation officer's report concluded, "The undersigned is of the opinion Ronald should be remanded to the adult court. He is basically a mature and responsible 17-, soon to be 18-year-old person who was gainfully employed, not attending school and in a sense, emancipated while living with his mother and grandmother, he paid a modest amount of room and board, and was, for all intents and purposes, a self-regulated person. The undersigned feels the above factors are such that this matter should be referred to the adult court and that Ronald is more fit to be handled as an adult rather than as a juvenile."

■ The evidence before the court sustained its implied finding that the minor was 16 years of age or older at the time of the alleged commission of such offense, and that he would not be amenable to the care, treatment and training program available through the facilities of the juvenile court.

-C-

Even though the evidence may be sufficient to sustain the ultimate finding of the court, there is authority which indicates the finding and order directing proceedings in the criminal court should be set aside if the record reflects it is based on improper criteria. (See *Jimmy H.* v. *Superior Court, supra,* 3 Cal.3d 709, 716; *People* v. *Joe T., supra,* 48 Cal.App.3d 114, 119; and *Richerson* v. *Superior Court, supra,* 264 Cal.App.2d 729, 731-732.)

In rendering his decision the judge of the juvenile court commented as follows: ". . . the Court has considered the nature of the offense which brings Ronald to Court today, the manner of its commission; also the fact that really for all practical purposes Ronald has been emancipated. Now, the thrust of the Juvenile Court program is to work and solve these problems in the home setting if at all possible; and a situation where we have a young man who is really working full time and paying room and board, that situation doesn't exist. The resources that we have in the Juvenile Court for working with the young person with his family really do not exist in this case, because, for all practical purposes, Ron was functioning as an adult. [¶] The fact that he has not been to school, there again, that is one of the other areas that we try to work with through the

Juvenile Court. That isn't available to us here; and I just feel by virtue of maturity and the other factors as revealed to me in this report, that Ron just isn't amenable to the Juvenile Court processes and should be transferred to the Adult Court."

Because the court considered that the minor for all practical purposes had been emancipated, and could not profit from programs which worked with him and his family, defendant now assumes that it did not consider that the minor might be amenable to treatment by the Youth Authority under a commitment to one of its institutions, as was in fact the ultimate disposition by the criminal court. Secondly, defendant claims that the court in referring to the minor's emancipation applied as a mechanical rule for transfer to the adult criminal court, a factor which should only have bearing on the question of whether a minor could be properly treated in the home, as distinguished from out of the home through other services or institutions, including the Youth Authority.

In our opinion it is presumptious to conclude that because the juvenile court judge mentioned factors which tended to show that the minor was not amenable to the care, treatment and training programs which could only be furnished through the facilities of the local juvenile court, he overlooked the possibility that the minor might be amenable to the care, treatment and training program furnished by the state for both minors subject to the jurisdiction of the juvenile court, and those under the jurisdiction of the adult criminal court. In the quoted statement the judge referred to "the other factors as revealed to me in this report"; and after pronouncing his decision he added, "I think for the record I should indicate that the Court has considered all of the behavioral patterns as set forth in the report which was previously referred to, and those that I have just specifically discussed are just some of the more glaring factors; but there are other factors contained in the report which impressed the Court that this really is a case for the Adult Court."

As the presiding officer of the juvenile court, the judge must be presumed to know that a minor may be committed to the Youth Authority by the juvenile court, as provided in sections 731, 734, 735, 736 and 1736 of the Welfare and Institutions Code. (See also §§ 779, 780 and 1737.1 and 707.) (See *People* v. *Browning, supra,* 45 Cal.App.3d 125, 139, fn. 11.) Having concluded that any other program of the juvenile court would not be appropriate, it was not illogical to order the matter to the adult court. By such course the resources of the Youth Authority would not be lost, but on the whole record, if guilt were established, the

alternatives for restraint, treatment or rehabilitation would be broadened rather than constrained.

Even if the foregoing conclusions are erroneous, on the record in this case, it would be futile to remand the matter to permit the judge to state what the law must presume was in his mind. In the motion requesting the juvenile court to set aside its findings and to conduct a rehearing the defendant argued, as he does here, that there was no substantial evidence in the record to support the finding of the minor's lack of fitness for treatment in the juvenile court, and a rehearing was requested because of the inadequacy of counsel. It was particularly alleged, "With more effort, counsel might have obtained the services of an expert from the California Youth Authority with regard to the minor's amenability to treatment at facilities operated by that agency. This is what is intended if a rehearing is granted in this case." According to the petition for extraordinary relief "a hearing was held on November 16, 1973, at which the Motion was denied on the ground that the Juvenile Court had lost jurisdiction to rehear the matter and that, *even if it continued to have jurisdiction, it would not change its finding that petitioner was not a fit subject and its order that he be transferred for prosecution under the general law.*" (See petition, 1 Civil 34288, italics added.)

In *People* v. *Joe T., supra,* the court reversed a minor's conviction in adult court and remanded the entire matter to the juvenile court "for reconsideration and a finding as to appellant's amenability or nonamenability to the care, treatment and training program available through the facilities of the juvenile court, including a Youth Authority commitment as a juvenile." (48 Cal.App.3d at pp. 121-122.) This result was thought necessary "because the referee's comments at the time of the unfitness hearing clearly demonstrate[d] that a Youth Authority commitment as a juvenile was excluded from consideration." (*Id.,* at p. 121.) In this case we do not believe the record so clearly demonstrates. Nor do we agree with the suggestion in *People* v. *Joe T., supra,* that an order under section 707 must be reversed in the absence of an express finding that the minor would not be amenable to a Youth Authority commitment as a juvenile. (Cf. *People* v. *Browning, supra,* 45 Cal.App.3d 125, 139.)

## III

Defendant's contention that he did not receive the effective assistance of counsel at the original "fitness" hearing on October 25, 1973, was first raised in his motion filed in the juvenile court to set aside the original

order and to grant him a rehearing. It was again raised in his motion for remand before the criminal court. His petition for writ of mandate and for writ of prohibition subsequently filed with this court tangentially referred to the shortcomings of defendant's original counsel. ■ It is axiomatic that the right to effective assistance of counsel applies to the type of hearing under review. (See *Kent* v. *United States, supra,* 383 U.S. 541, 553, 554 and 561 [16 L.Ed.2d 84, 92-94, 97].)

Defendant's claim is three-pronged. The transcript reflects that defendant's counsel acknowledged that he received the probation officer's report at noontime on the day the hearing was held and that he had an opportunity to read it. It also shows that counsel had an opportunity to review the matter with the court in chambers, and that he had the defendant's father present prepared to testify at the hearing. First, in the light of hindsight, it is now asserted that counsel should have requested a continuance to prepare to counter the recommendations of the report; that he should have questioned the probation officer to determine whether in making his recommendation he had given any consideration to facilities of the juvenile court system which do not depend on working with the minor in his home and school environment; and that he failed to stress to the court the many factors other than "emancipation" which may be considered in making a determination of fitness. We find no warrant for present counsel's assertion that his predecessor "meekly acceded to the Court's determination" or that he was "rolling over and playing dead." It is presumptious to speculate as to what matters were discussed in chambers, and the transcript sets forth a lengthy offer of proof (see part II B above) which counsel made in support of his position that jurisdiction should be retained by the juvenile court. Defendant now fails to distinguish between the probation officer's duty to furnish "a report on the behavioral patterns of the person being considered for unfitness," and the court's implied knowledge of "the care, treatment and training program available through the facilities" which it utilizes (§ 707). ■ The record fails to show that the hearing was reduced to a farce or sham by counsel's failure to ask for a continuance, or his conduct at the hearing. (See *People* v. *Brooks* (1966) 64 Cal.2d 130, 139-140 [48 Cal.Rptr. 879, 410 P.2d 383]; *People* v. *Hoffmann* (1970) 7 Cal.App.3d 39, 44 [86 Cal.Rptr. 435]; and *People* v. *Darmiento* (1966) 243 Cal.App.2d 358, 364 [52 Cal.Rptr. 428] [cert. den. (1967) 386 U.S. 1010 [18 L.Ed.2d 438, 87 S.Ct. 1353].)

Secondly, former counsel is criticized because he made no effort to show through the testimony of experts that his client was in fact

amenable to the care, treatment and training program of the Youth Authority. The motion for rehearing in the juvenile court requested an opportunity to secure the testimony of an expert from the California Youth Authority with regard to the minor's amenability to treatment at facilities operated by that agency. At the hearing on the motion for remand in the criminal court, the defendant made the following offer of proof: to show by the deputy probation officer, who made the report to the juvenile court, that he did not consider the availability of the care, treatment and training programs of the Youth Authority in recommending that the minor be found unfit, and that the first notice to defendant's counsel that there would be a fitness hearing was when he was given the report to read at noontime on the day of the hearing; to show by the testimony of a senior group counselor who dealt with the minor while he was at juvenile hall and another group counselor from the hall, that the minor was an average 17-year-old in regard to his maturity, and, in the opinion of the counselor, would be amenable to treatment through the Youth Authority; testimony of a child psychiatrist to the effect that the minor should be treated the same as any other 17-year-old; and, through the supervisor of case services for the Youth Authority, the opinion that "were this case to be committed to the Youth Authority from the juvenile court under the usual procedures, he would be accepted for programming."

The letter report of the Youth Authority supervisor of case services is significant. He concluded, "Obviously, it is extremely difficult, if not impossible, to make a prediction on the time required to treat an individual. Experience has shown that the length of treatment does not necessarily correlate with the nature of the crime, and a reasonable prediction can only be made after more prolonged study of the individual in treatment." Defendant appears to assume that if the proffered evidence had been presented to the juvenile court judge he would have retained jurisdiction because he could send the minor to the Youth Authority if he were found guilty, and that if the judge failed to retain jurisdiction it would have been an abuse of discretion as a matter of law. It is evident from the judge's ruling on the motion for rehearing that he would not have found the minor fit for the juvenile court merely because the Youth Authority would have accepted him under such a commitment. The other evidence offered goes no further than to show that, as stated by the child psychiatrist, "in a case as serious as his [the juvenile court] would take upon itself the role of parent surrogate, via one of its institutions."

In *Jimmy H.* v. *Superior Court, supra,* the court first stated, "Testimony of expert witnesses may also provide guidance for the court's decision on the fitness of a minor for treatment as a juvenile. (See Cal. Juvenile Court Practice (Cont. Ed. Bar 1968) §§ 137-138, pp. 125-126.) Since the dispositive question is the minor's amenability to treatment through the facilities available to the juvenile court, testimony of experts that the minor can be treated by those facilities is entitled to great weight in the court's ultimate determination." (3 Cal.3d at pp. 714-715.) It added later, "Furthermore, although expert testimony indicating a juvenile's amenability to treatment offered by the juvenile facilities weighs heavily in his favor, it is not conclusive." (*Id.,* p. 715.) In *Donald L.* v. *Superior Court, supra,* the court upheld the denial of a motion to appoint a psychiatrist to examine the minor and present evidence on the issue of his fitness for treatment as a juvenile. It stated, "Testimony of expert witnesses may guide the juvenile court's decision on the minor's amenability to treatment through the facilities of the court (*Jimmy H.* v. *Superior Court* (1970) 3 Cal.3d 709, 714 . . .), but the only particular kind of evidence which *must* be furnished and considered by the court is a probation officer's report on the minor's behavioral patterns. (*Id.*) As will appear from the discussion of the sufficiency of the evidence to support the court's finding of unfitness, *infra,* evidence of a current psychiatric evaluation of the minor, whatever its results might have been, would have been cumulative, and the court's failure to require such an evaluation was not an abuse of discretion." (7 Cal.3d at pp. 599-600.) In that case, as here, the court had before it the record of the juvenile's favorable behavior pattern while detained awaiting hearing. (*Id.,* at p. 601. See also *People* v. *McFarland, supra,* 17 Cal.App.3d 807, 812-813, where conflicting expert testimony.)

It is the judge, not the probation officer, or the experts, who must make the immediate decision as to whether juvenile court jurisdiction should be retained or rejected. ▮ Since on the entire record there was sufficient evidence to sustain the court's order, and a rehearing was denied, we conclude that any failure of original counsel to produce subsequently discovered opinion evidence did not deprive the defendant of the effective assistance of counsel.

Finally, private counsel is attacked because he failed to point out to the court that emancipation was an improper standard. ▮ As we have pointed out above, the record fails to show that the court used the minor's emancipated status as the sole criterion. Counsel could not be faulted, however, because he did make a determined effort to show

through the proffered testimony of the father that his client should be offered facilities of the juvenile court other than the last resort institution now suggested by present counsel.

Defendant is not entitled to have his conviction set aside on the ground that he did not have the effective assistance of counsel at the original hearing under the provisions of section 707.

The judgment is affirmed.

Molinari, P. J., and Elkington, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 10, 1976.